(Decided 25th March, 1879.)

---

The Baltimore and Ohio Railroad Company *vs.* Ellen H. Trimble, and others.

*Owelty in Partition, an Equitable Lien on the Purpart— Statute of Limitations, not applicable to a Vendor's Lien— Presumption that an Equitable Lien, or Lien by Mortgage is satisfied after Twenty Years—Subrogation of a pledged Security, for the benefit of the Creditor.*

An equitable lien, in the nature of a vendor's lien exists for the amount of money allowed as owelty in partition.   It becomes a valid charge upon the purpart, on account of which it is granted,

so soon as the partition is made final by the decree, and if not paid, it may be recovered by proper proceedings in equity against the land so charged.

The Statute of Limitations does not apply to an equitable lien on land. The lapse of twenty years, as in the case of a lien by mortgage, is necessary to raise the presumption, that such a lien has been satisfied.

The lien by mortgage continues for twenty years, not because of the seal attached to the mortgage, for sealed instruments in this State are barred by twelve years, but because it is a deed of conveyance, the rights under which are not barred except by the lapse of twenty years, by analogy to the time of limitations under the Statute of James, which saves the right of entry for that period.

Holders of an equitable lien for the amount of money allowed as owelty in partition, cannot be properly chargeable with *laches* when they have instituted their proceedings to enforce their lien within twenty years, and so soon as they became informed of their rights.

A pledge of a United States bond, to secure another against loss from the payment of a debt not due primarily by him inures to the benefit of the creditor.     And equity will accordingly subrogate the security thus held, whether the creditor was apprised of it or not at the time of its deposit.

Appeal from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued, by agreement, before Bartol, C. J., Brent and Miller, J., and the decision was participated in by Bowie, J.

*John H. B. Latrobe,* for the appellant.

The appellant contends that the $1167 stated in the return of the commissioners in the partition of the property in question under proceedings in equity, as to be paid by Division A to Division B, are not a lien upon the land.

The return of the commissioners draws a clear distinction between this sum and the mortgage debt, when it

says, "Division A has got in property chargeable with mortgage debt," and then goes on to say, that Division A— (which here means Andrew Flannigan) is to "pay to Division B (which here means the complainants,)—$1167."

Had the Commissioners intended to make the $1167 a charge on the land—their language would have been "Division A has got in property chargeable with mortgage debt, and $1167 to equalize the partition."

While then, the $5000 were a lien on Division A, the $1167 were not a lien, but a debt due by the party receiving Division A, that is to say,—Flannigan.

The decree ratifies and confirms the report of the Commissioners.

It goes further, it requires Flannigan to pay the mortgage debt, and to file the release when obtained, "among these proceedings."

The brief filed on behalf of the Steam Company deals with the present case on the ground that, in a decree for partition the vendor's lien does not, as a general proposition, attach in favor of amounts required to be paid to equalize the respective portions of the property to be divided; and the views there expressed are fully concurred in. The case at bar, however, is in one respect peculiar, and unlike those which were relied on by the appellees in the Court below.

The vendor's lien exists by implication. But this implication may be rebutted by facts inconsistent with it; and the report of the Commissioners and the confirmatory decree of the Court are relied on to rebut any such implication in the present case.

Had the Circuit Court intended to make the decree for the $1167 a lien, it had full authority to do so; (*Code of Public General Laws, Art.* 10, *sec.* 130,) nor can this failure be regarded as accidental or immaterial.

The decree requires the release of the mortgage to be recorded "among the proceedings,"—why? that those in-

terested in examining the title might see that the lien of the mortgage for $5000 had been discharged. Had the Court intended that the $1167 should be a lien, why did not the decree require a lease of it to be filed among the proceedings? There was the same reason for this, that there was in regard to the mortgage, so far as giving notice to purchasers was concerned.

But in the examination of the title here, the decree gave no notice of a lien. Going back, out of abundant caution, to the proceedings of the commission, it was to be seen, not only that was there no lien to be implied, but that there was a clear distinction in this regard between the case of the mortgage, and the amount to be paid to equalize.

Under all the circumstances of this case, whatever might be the ruling of the Court on the general proposition that a sum of money required to equalize is not a lien upon the land, unless expressly made so, the decree in the present case can be regarded as differing in no wise from an ordinary decree for the payment of money liable to be barred after twelve years by the Statute of Limitations.

Then, why should such a decree for money live for twenty years, whilst all other decrees for money die in twelve years? No authority for this proposition can be found.

By Article 47, sections 54 and 55, the bonds taken for the sale of an intestate's real estate are to remain a lien on "the real estate" until the money shall be "wholly paid." Suppose the money be not paid for fifty years, will it be claimed that the bond is good for fifty years? Such bonds are generally believed to be barred in twelve years, and if not then, upon what authority or decision are they kept alive for any further *specified* time, or rendered immortal?

So with a money decree in equity. If not barred in twelve years, like any other judgment of a Court, what

authority is there for terminating its existence in twenty years?

As to whether limitations bar this vendor's lien, this defence is recognized in *Hooper vs. Logan*, 23 *Md.*, 210. But there is believed to be no case in which the point has been expressly adjudged in this State by the Court of Appeals.

But elsewhere, as in *Sherntz vs. Nicodemus*, 7 *Yerger,* (*Tenn.*,) 10, the Court say that this lien is not of the nature of an express trust, but an implied trust, and is barred by limitations.

In *Borst vs. Corsey*, 15 *N. Y. R.*, 510, the Court say that the lien co-exists with the debt, and when time bars the remedy for the collection of the debt at law, the lien cannot survive; and that independently of the Statute what bars the debt, bars the lien.

And in *Trotter vs. Ervin*, 27 *Miss.*, 778–9, the decisions of Chancellor BLAND, in *Lingan vs. Henderson*, and *Moreton vs. Harrison*, were expressly considered and disapproved.

*Thomas S. Baer* and *John Scott, Jr.*, for the appellees.

A Court of equity, in partition cases, undoubtedly has the right to divide the property into unequal parts, and direct the payment of a sum of money to equalize the partition. *Story's Eq. Jur.*, sec. 654, and cases cited; *Adams' Equity*, 231; *Warfield vs. Warfield*, 5 *H. & J.*, 459.

It is contended on behalf of the appellees, that when this is done, even where, by the terms of the decree, the payment of the sum awarded for equality is not expressly charged upon the larger division, the party to whom the smaller division is allotted has an equitable lien upon the larger for its payment, which a Court of equity will recognize and enforce. The law cannot contemplate the injustice of taking property from one person and giving it to another, without an equivalent or a sufficient security

for it; and the only adequate security is an equitable charge upon the property. The payment of the money is in the nature of a condition, upon the fulfilment of which alone a clear title to the land can be obtained. This doctrine, laid down in the text books and in the decisions in other States, has never before been raised in this State, although this Court, in numerous analogous cases, where the equities of the parties were in nowise superior to those of the appellees in this case, has approved of the principles upon which the doctrine is based. *Freeman on Co-tenancy and Partition, sec.* 507; *Crawford vs. Severson,* 5 *Gill,* 443; *Greenwood vs. Greenwood,* 5 *Md.,* 334; *Long vs. Long,* 1 *Watts,* 269; *Gregory vs. Hooker,* 1 *Hawks.,* (*N. C.,*) 395–406; *Calhoun vs. Rail,* 26 *Miss.,* 414–420; *Cox vs. McMullin,* 14 *Gratt.,* 82–91; *Union Hall Association vs. Morrison,* 39 *Md.,* 281–298; *Oswald vs. Hoover,* 43 *Md.,* 363.

If the appellees have an equitable lien or charge upon the land for the payment of their claims, it necessarily follows, that sec. 3 of Art. 57, of the Code, is no bar to their claim for relief, because, as to all such liens, Courts of equity apply, by analogy, the period of limitations which would bar a right of entry at law, that is, twenty years. *Crawford vs. Severson,* 5 *Gill,* 443; *Greenwood vs. Greenwood,* 5 *Md.,* 334; *Dugan vs. Gittings,* 3 *Gill,* 161; *Oswald vs. Hoover,* 43 *Md.,* 360; *Story's Eq. Jur., sec.* 1520.

A Court of equity, by such a decree, in effect compels a sale of a portion of the land by the one party to the other, and places them very much in the relation of vendor and vendee. The one has the land and owes the purchase money, and the other has parted with the land without being paid. The lien arises simply from the fact, as the ordinary vendor's lien does, that the "purchaser ought not to be allowed to hold the land as his own, until the vendor is fully satisfied." As it is aptly expressed by the Court below, in its opinion, "equity could not, with

any sort of consistency, refuse to extend the doctrine to a case of partition and owelty, where the Court itself joins the hands of the parties, instead of their voluntarily striking hands upon the bargain." *Allnatt on Partition,* (5 *Law Lib.,*) 12; *Hulbert vs. Hart,* 1 *Vern.,* 133; *Spalding vs. Brent,* 3 *Md. Ch. Dec.,* 411; *Thomas vs. Farmers' Bank,* 32 *Md.,* 57.

To the enforcement of a vendor's lien in Maryland, the only bar is a limitation of twenty years. *Lingan vs. Henderson,* 1 *Bl.,* 282; *Moreton vs. Harrison,* 1 *Bl.,* 498, *&c.; Iglehart vs. Armiger,* 1 *Bl.,* 522, *&c.; Dugan vs. Gittings,* 3 *Gill,* 161; *Magruder vs. Peter,* 11 *G. & J.,* 235.

It is further contended, on behalf of the appellees, that, by the partition decree, the payment of the amount allowed them to equalize the partition, is *charged* upon the land allotted to Flannigan.

Taking the return and decree together, a charge on the land for the payment of the money is as clearly indicated, as if express words to that effect had been used in the decree. To the enforcement of this lien, the limitation of twenty years is the only one that can apply. *Bull vs. Pyle,* 41 *Md.,* 419–421; *Wynne vs. Tunstall,* 1 *Dev. (N. C.) Eq.,* 23; *Jones vs. Sherrard,* 2 *Dev. & Bat. (N. C.) Eq.,* 179; *Sutton vs. Edwards,* 5 *Iredell Eq., (N. C.;) Young vs. College, Phillips' Eq., (N. C.,)* 261.

There was no *laches* on the part of the appellees. They were made parties defendant in the partition case, when they were, with one exception, non-resident infants. They appeared, and answered by guardian *ad litem,* and submitted their rights to the protection of the Court. With one exception, they have continued to be non-residents. The testimony shows that they were totally ignorant of the decree in their favor until early in the year 1875; and that, as soon as they became aware of it, they filed the bill in this case.

As to the claim of the appellees to the bond, the appellees contend, that the agreement, under which it was

deposited, made its proceeds available for the payment of their claim. The doctrine of subrogation, as it is called, is nowhere better established than in Maryland. *Kunkel vs. Fitzhugh,* 22 *Md.,* 577; *Owens vs. Miller,* 29 *Md.,* 161; *Parker vs. Boyd,* 43 *Md.,* 182; *Moses vs. Murgatroyd,* 1 *Johns. Ch.,* 128; *Eastman vs. Foster,* 8 *Met.,* 19.

BRENT, J., delivered the opinion of the Court.

This case arises under a decree of partition, passed by the Circuit Court of Baltimore City, on the 24th day of October, 1856, making division of the real estate owned in common by Samuel Trimble in his life-time, and a certain Andrew Flannigan. Samuel Trimble being dead at the time the proceedings were instituted, his interest had descended to his children as heirs-at-law, and they were made parties.

The estate was divided into two parts, designated as Division A, and Division B. Division A, was allotted to Andrew Flannigan, and Division B, to the heirs of Samuel Trimble.

The part allotted to Flannigan being of more value than that allotted to the heirs of Samuel Trimble, the values were equalized by charging upon his part the payment of a mortgage which had been given upon the whole estate for $5000, and by an allowance to the heirs of Trimble of $1167 as owelty.

The lots and land composing Division A were afterwards sold by Flannigan, a part to the Baltimore and Susquehanna Steam Company, and a part to a certain William West. After the death of West, the part which he had purchased was sold by his heirs to the Baltimore and Ohio Railroad Company.

The sale to the Steam Company was in 1864, and to the Railroad Company in 1870. The present bill was filed on the 8th of May, 1875.

The appellees, who are the complainants in the bill, aver that their share of the owelty of partition being

$1037.34, has never been paid and is still due with interest thereon. They now claim that it is an equitable lien upon the land, included by Division A, in the possession of the Steam and Railroad Companies respectively, and ask that it may be recognized and enforced against them.

No question has been made about these companies being purchasers with notice of this outstanding claim, and we shall not therefore refer to the facts which put them in that attitude. Nor is it claimed that there is any thing in the proof to show, that this debt has ever been actually paid by Flannigan or any other person.

That the sum awarded in partition for inequality between the smaller and larger divisions, is a lien upon the larger division we are well satisfied. The final decree operates as a conveyance, and transfers in severalty what was held in common. If the division is unequal in value, this inequality is compensated by the allotment of a sum of money sufficient to equalize the respective divisions. In other words, where one party gets more of the land than his co-tenant, he is required to pay for the excess, because the land to that extent, which has been allotted to him, is in fact and in the eye of the law the land of his co-tenant. It forms the consideration for which the payment is to be made, and in getting the land of another for a moneyed consideration, it must be that he is to be considered a purchaser. If the land had been directly sold by the co-tenant no question could be raised of the lien, and it would be held to extend to all the land so sold. *Long vs. Long,* 1 *Watts,* 269.

The ground, upon which equity asserts the vendor's lien, is the injustice and inequity of allowing the purchaser to hold land as his own, until the owner, from whom he has purchased it, is fully paid the purchase money. The reason of the rule is quite as applicable to the conveyance of the property of another by the act of the Court, as it is to the sale and conveyance of it by the

owner himself. It is equally as unjust and inequitable, in the one case as in the other, that a party, without paying what is in reality the purchase money, should be permitted to hold the land absolutely as his own. We concur with the learned Judge of the Circuit Court, that "equity could not, with any sort of consistency, refuse to extend the doctrine to a case of partition and owelty, where the Court itself joins. the hands of the parties instead of *their* voluntarily joining hands upon the bargain."

A little singular as it seems, this question does not appear to have been decided in this State, although the Courts of equity from an early date have been exercising their jurisdiction in matters of partition. In some of the other States it has arisen, and the lien has been consistently maintained and held to attach to the entire purpart. In *Davis vs. Norris,* 8 *Pa.,* 125, C. J. GIBSON uses the following language: "The final judgment in partition is *quod partitio firma et stabilis in perpetuam teneatur;* and the statute authorizes nothing to be added to it. It charges owelty of partition, awarded by an inquest, on the purparts *proprio vigore.*" See also *Wynne, et ux vs. Tunstall,* 1 *Dev. Eq. Reps.,* 28; *Long vs. Long,* 1 *Watts,* 269; *Darlington's Appropriation,* 13 *Pa.,* 430; *Gregory vs. Hooker,* 1 *Hawks.,* 406.

In *Allnat on Partition,* p. 12, (*m,*) it is said; "There are various ways of effecting an equality of benefit on a partition, independently of an equal division of the property itself. For instance, if two messuages descend to two parceners, and they are of unequal value; then, to prevent the inconvenient necessity of dividing either of them by rooms and chambers, one messuage may be allotted to each of the parceners, and she who has the more valuable messuage may pay a sum in gross to her companion; and this is *like selling so much of her part.*"

And so in *Freeman on Co-tenancy and Partition, sec.* 507, "when an equal partition cannot be otherwise made,

Courts of equity may order that a certain sum be paid by the party to whom the most valuable purpart has been assigned. The sum thus directed to be paid, to make partition equal, is called owelty. It seems to have been a lien on the purpart on account of which it was granted. The law cannot contemplate the injustice of taking property from one person and giving it to another without an equivalent or a sufficient security for it."

We are satisfied then both upon principle and authority that an equitable lien, in the nature of a vendor's lien, exists for the amount of money allowed as owelty in partition. It becomes a valid charge upon the purpart, on account of which it is granted, so soon as the partition is made final by the decree, and if not paid may be recovered by proper proceedings in equity against the land so charged.

It is hardly necessary to add, that in the present case the amount claimed by the complainants is made a charge upon the land by the very return of the commissioners, who were appointed by the Court to make the division. This return being ratified by the final decree and thus forming a part of it, (*Bull vs. Pyle,* 41 *Md.,* 421,) conclusively shows the nature and terms of the partition. The land being divided into unequal parts, it is stipulated that Division A, is "to pay to Division B, $1167." This would indicate a charge for that amount upon Division A, and is hardly susceptible of any other construction. It is the same in effect as if the commissioners had used the words *chargeable upon.*

In regard to the Statute of Limitations, whatever may be the ruling in some of the other States, we do not think it applies under the practice and rulings in this State. It would probably work some surprise, if we were to hold that a vendor's lien was good only for three years, or until the remedy for the debt was barred at law.

The reasoning and grounds taken by Chancellor BLAND in regard to the application of limitations to a vendor's

lien have never been overruled by this Court, as is supposed by the counsel for the appellant. On the contrary, they have been substantially adopted and acted upon. The case of *Lingan vs. Henderson*, 1 *Bl.*, 236, was reversed by the Court of Appeals because the complainants were not entitled to relief upon the merits as disclosed by the proof. The question of limitations was not passed upon or inquired into by the Court. *McCormick vs. Gibson*, 3 *G. & J.*, 19. The grounds taken by the Chancellor in that case as to the applicability of limitations to a vendor's lien seem to be sound and well taken. He says on page 281: "But this is in substance a bill by vendors against purchasers to enforce an *equitable lien* as a means of recovering the purchase money; and therefore admitting it to be true, that the cause of suit, so far as it is founded in simple contract, * * * has been barred by the Statute of Limitations, yet the determination of that point does not close the substantial equity of the case, because the plaintiffs' equitable lien must still remain to be disposed of by the Court." In discussing this equitable lien, he holds that there is no difference between it and the lien secured by a mortgage; and applies to it by analogy the lapse of twenty years as necessary to raise the presumption that the lien has been satisfied.

Again, in *Moreton vs. Harrison*, 1 *Bl.*, 499, the Chancellor says: "This equitable lien is so far a mortgage, that the limitation or presumption of satisfaction arising from the lapse of twenty years as applicable to ordinary mortgages does in like manner furnish evidence, or a presumption, that such equitable lien has been satisfied or discharged. An equitable lien is founded upon the principle, that the legal title has not been parted with or *ought not to be considered as completely vested in the vendee until the whole purchase money has been paid; because it is deemed unjust to consider any one as the absolute legal owner of property which he has purchased, but has not paid for. * *

If the formal legal title has been parted with by the vendor before payment, then his having so ceded it, gives him an equitable right to enforce payment here with all the advantages he had as actual holder of the legal title, that is as a mortgagee coming here to foreclose; in which case, by analogy to the Statute of Limitations, no time short of a lapse of twenty years is deemed sufficient to raise a presumption of satisfaction." See also *Iglehart vs. Armiger*, 1 *Bl.*, 523.

In the case of *Ringgold vs. Bryan*, 3 *Md. Ch. Decs.*, 489, a vendor's lien was enforced upon a bill filed more than thirteen years after the conveyance of the land to the purchaser.

In *Crawford vs. Severson*, 5 *G.*, 443, which was, it is true, as stated by appellant's counsel, a case to enforce a legacy charged upon land, the *general doctrine* of the application of limitations to equitable liens upon land, is strongly and clearly stated. The Court says on page 448: "In enforcing liens upon land, Courts of equity, by analogy, generally adopt the statutory bar of twenty years against a right of entry, as a bar to relief where the lien is of more than twenty years standing, and when the plea of limitations or lapse of time is relied upon."

But without referring to other cases, where the vendor's lien has been enforced in equity after an action at law for the purchase money was barred by limitations, we think the question is virtually settled in *Magruder vs. Peter*, 11 *G. & J.*, 217. In that case the notes, taken for the purchase money, were barred by limitations, and upon a bill, filed to enforce the equitable vendor's lien, limitations, among other defences, were expressly relied upon. The Court held that the statute did not apply, and the lien was enforced.

There had been no conveyance in that case, but where the lien has been found to exist, it can make no difference in the matter of enforcing it, whether there is or not a

conveyance. In deciding the question of limitations, the learned Judges of the County Court, Judges DORSEY and BREWER, and the Court of Appeals, substantially adopt the views of Chancellor BLAND above referred to. In the opinion of the Court of Appeals, on page 245, it is said: "As to the plea of limitations and the lapse of time upon which the defendant, Carter, relies, we think they are unavailable against the complainant's claim, under the circumstances of this case. Although the plea of limitations would bar a recovery on the note, *yet the loss of the remedy on this note, it is clear, would not bar the complainant's remedy in equity upon the ground of his equitable lien.* In the case of a mortgage, the law seems to be so understood. See 1 *Powell on Mortgages*, 393, where it is said, "if the collateral security had been a note of hand, instead of a bond, the Statute would run against the note and leave the mortgage as it was." The Court manifestly puts a vendor's lien, so far as the applicability of limitations is concerned, upon the same ground with a lien by mortgage. The latter, it is well settled, continues for twenty years, not because of the seal attached to the mortgage, for sealed instruments in this State are barred by twelve years, but because it is a deed of conveyance, the rights under which are not barred except by the lapse of twenty years, by analogy to the time of limitations under the Statute of James, which saves the right of entry for that period.

It thus appears, that whenever the question of limitations, as a bar to an equitable lien upon land, has been considered by the Courts of this State, they have applied, by analogy, the period of twenty years as the time necessary to raise a presumption of the extinguishment of the lien. Such we consider the recognized doctrine in this State, and we are not disposed to disturb it.

It follows, as the present bill has been filed within twenty years, that the defence of limitations is of no avail to the appellant.

But it has been very earnestly argued, that the appellees are not entitled to relief, because they have been guilty of *laches* in not filing their bill at an earlier date. If their lien is good for the period of twenty years, we do not perceive that they can be properly chargeable with *laches*, when they have instituted their proceedings to enforce the lien within that period of time. But even assuming, that the delay in filing their present bill would presumptively establish the charge of *laches*, we concur with the Judge of the Circuit Court, that the delay is satisfactorily accounted for by non-residence, infancy, and ignorance of the existence of this claim. There is no ground to say, that the relief asked for should be refused, because the appellees have slept on their rights. It appears, that so soon as they became informed of them, the present proceedings were instituted.

We cannot see what *actual* interest the appellees have in litigating their right to the security in the hands of Mr. Williams. The land which is chargeable with their equitable lien is amply sufficient to secure its immediate payment. And the appropriation of that security would seem to be rather a question between the Baltimore and Susquehanna Steam Company and the administratrix of Flannigan. But as it is embraced in the decree of the Circuit Court we will briefly consider it. When Mr. Williams examined the title to the land, which the Steam Company was about purchasing from Andrew Flannigan, he discovered this claim outstanding. With his usual care he required Flannigan to take some steps to secure the Company against ultimate loss on account of it. This was done by depositing with him a $1000 U. S. bond "*as a collateral security for the Baltimore and Susquehanna Steam Company* that he Flannigan would produce evidence, that the claim had been paid," and upon the further condition that the bond was not to be returned until such evidence was produced. This bond has since been called

in by the United States and paid to Mr. Williams, who still holds the money. No question can arise about the money being now held by him upon the same terms as was the bond.

It is clear that this bond was deposited as collateral security to reimburse the Steam Company in the event of their being required to pay this claim as a lien upon the land they bought from Flannigan. They had bought the land and paid its full value free from this incumbrance. If required to pay the debt, the terms of the deposit of the bond could mean nothing more or less than that the proceeds were to be used for that purpose. Flannigan was the principal debtor, and this bond was specially appropriated by him for the purpose of meeting this debt. No doctrine seems to be better settled, than that a pledge of this sort, to secure another against loss from the payment of a debt not due primarily by him, inures to the benefit of the creditor. And equity will accordingly subrogate the security thus held, whether the creditor was apprised of it or not at the time of its deposit. *Kunkel vs. Fitzhugh*, 22 *Md.*, 577; *Owens vs. Miller & Mayhew*, 29 *Md.*, 161; 1 *Story's Eq. Juris.*, secs. 638, 639; *Eastman vs. Foster*, 8 *Met.*, 19.

The claim now set up by the administratrix to the proceeds of the bond in question cannot be allowed. The lien, against which it was pledged as security to the Steam Company, exists as a valid and enforceable lien, and the company is entitled to have it applied towards its extinguishment. This has been properly done by the decree below.

Finding no error in the decree of the Circuit Court it will be affirmed.

> *Decree affirmed, with costs, to be paid equally by the Baltimore and Ohio R. R. Co. and the Baltimore and Susquehanna Steam Co.*

(Decided 25th March, 1879.)