ONDERDONK ET AL. *v.* ONDERDONK ET AL.

[No. 346, September Term, 1972.]

*Decided July 27, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*James O. Onderdonk,* with whom was *William H. Onderdonk* on the brief, for appellants.

Submitted on brief by *H. Emslie Parks* for Alexandrina R. Onderdonk, one of appellees. No brief filed on behalf of other appellees.

McWILLIAMS, J., delivered the opinion of the Court.

There are eight Onderdonks. In common they own a 6.29 acre lot at the northeast corner of Joppa Road and Bellona Avenue in Baltimore County. Around the turn of the

century the lot was improved by a 20 room frame dwelling now somewhat the worse for wear, tear and neglect. Alexandrina, who is 66, wants to sell the property; Barbara, 49, Anna, and Phillip have agreed; Robert, 53, and John, 65, do not object; James, 59, and William, 56, do object. The ages of Anna and Phillip are not mentioned but it is possible to infer they are between 55 and 60.

On 16 September 1971 Alexandrina filed a bill for the sale of the property in lieu of partition. On 22 November James demurred.[1] On 23 November William demurred.[1] Judge MacDaniel set 2 February 1972 as the day for the hearing. Both demurrers were overruled. On 28 and 29 February James and William (appellants) demanded the particulars of the bill of complaint. Alexandrina excepted. On 15 March the appellants moved to dismiss Alexandrina's exceptions to their demands for particulars. On 10 May Judge Turnbull denied the motions to dismiss the exceptions and he sustained Alexandrina's exceptions. On 23 May the appellants each filed a motion for the production of certain documents, a demand for written instruments, a motion for a better statement of particulars, and a motion for a rehearing of the order of 10 May. Alexandrina moved for a decree pro confesso against the appellants on 26 May. James answered the motion on 7 June, William on 19 June.

A hearing on all pending motions was scheduled for 8 June before Judge Turnbull. At the request of James the hearing was postponed to 26 June. The hearing was again postponed to 10 July. On 11 July Judge Turnbull denied all motions and demands including Alexandrina's motion for a decree pro confesso. The appellants were ordered to answer the bill of complaint on or before 17 July. James answered on 12 July, William on 17 July.

The case was scheduled for trial before Judge Raine on 31 October. James, in a letter dated 29 October, sought another postponement; also he "respectfully requested" Judge Raine to disqualify himself. Judge Raine refused both requests.

---

1. Both James and William appeared *pro se.* James, a resident of Wisconsin, is a member of the bar of Maryland. William is also a member of the bar of Maryland.

Hugh E. Gelston gave testimony which established him as an expert real estate witness. He told of his familiarity with the property and said that its fair market value, in his opinion, was $65,000. He was also of the opinion, and so testified, that it would not be possible to divide the property into eight parts of equal value due to the fact that "the house sits to the northwest corner of the property." Responding to William's cross-examination he thought it would be worth $130,000 if it could be "rezoned for apartments." James W. Trammell, another expert, thought the property as presently used had a fair market value of $65,000. Assuming a special exception for a nursing home it was his opinion that it would have a value of $150,000. Asked to give his opinion "as to whether this property could be divided into eight equal shares of approximately the same value" he said he didn't "see any possible way" it could be done because of the lay of the land and the presence of the house.

Robert and Anna were present in court during the proceedings but they offered no evidence and although invited to do so by Judge Raine they declined comment. Phillip and Barbara were represented by counsel neither of whom offered any evidence in their behalf. John was not present nor was he represented by counsel. James was not present either in person or by attorney. William, at Judge Raine's invitation, made a statement. Little of what he said is relevant to the issue. His insistence that the property should be partitioned in kind, using "owelty to take care of equalizing the shares" drew from Judge Raine the following comment:

> " . . . Alexandrina is sixty-six, John is sixty-five. John, and Alexandrina, and even the younger ones, Robert and Barbara, have an interest in this property and they're entitled to get their money out of it now, that's the simple crux of this matter."

Judge Raine found "as a fact, based on the uncontradicted testimony, that it would be absolutely impossible to take a piece of property that is improved [and] that has the contours described by Mr. Gelston with approximately 700

feet frontage on the Joppa Road and approximately 100 feet frontage on Bellona Avenue and to divide that property into eight equal shares, all of which would be substantially equal in value." He concluded the property would have "to be sold in order that all of the parties can realize in money their interests" therein. William's motion for a "new trial" having been overruled, Judge Raine signed and filed on 1 December a decree appointing H. Emslie Parks, counsel for Alexandrina, and Richard H. Thompson trustees to make the sale, providing, however, that "no private sale of said property shall be less than $130,000." Both James and William have appealed.

The contentions advanced by the appellants, if not frivolous, are certainly without merit. They argue that the trial judge erred when he overruled their demurrers, that the denial of their motions for discovery was improper and prejudicial, that the refusal of James's request to postpone the hearing was prejudicial error, that the court wrongfully refused to hear any evidence other than ownership and value, that it was error to order the sale, to appoint trustees, and to sign the decree. We have read the entire transcript with care but since we have not seen anything that could be said to support their arguments we must conclude that the holdings below are free from error.

Woven into the obviously Fabian procedural tactics employed by the appellants is a notion that calls for a brief comment. We shall quote from their brief:

> "Appellants maintain that under the situation in the instant action partition in kind under the provisions of owelty is feasible without loss to the parties by the simple process of awarding the real estate to the appellants and money to the appellees as it is they who are seeking money. The value of the property and division to be determined by the appointment of a commission."

We think they have a somewhat distorted notion of the function of owelty. Our predecessors adopted what seems now to be its generally accepted definition. In *Baltimore and*

*Ohio R.R. Co. v. Trimble,* 51 Md. 99, 108-09 (1879), Judge Brent said, for the Court:

"In *Allnat on Partition, p.* 12, *(m,)* it is said; 'There are various ways of effecting an equality of benefit on a partition, independently of an equal division of the property itself. For instance, if two messuages descend to two parceners, and they are of unequal value; then, to prevent the inconvenient necessity of dividing either of them by rooms and chambers, one messuage may be alloted to each of the parceners, and she who has the more valuable messuage may pay a sum in gross to her companion; and this is *like selling so much of her part.*' [Emphasis in the original.]

"And so in *Freeman on Co-tenancy and Partition, sec.* 507, 'when an equal partition cannot be otherwise made, Courts of equity may order that a certain sum be paid by the party to whom the most valuable purpart has been assigned. The sum thus directed to be paid, to make partition equal, is called owelty. It seems to have been a lien on the purpart on account of which it was granted. . . .' "

To the same effect *see* 68 C.J.S. *Partition* § 142.
In 59 Am. Jur. 2d *Partition* § 61 it is said:

"The equalization of a partition by the award of owelty should not be resorted to where it is possible to make a fair and equitable division without it. The court must see that the requirement of owelty is equitably necessary, that the amount required is fair, and that its payment is not so imposed upon a party as to be unreasonably burdensome.

"While it has been held by some courts that statutes allowing sale for partition obviate the necessity for owelty, and by implication take away the power to allow it, the better opinion seems to be that such a statute does not abrogate the power to allow owelty, but that the power of sale is an

> additional one to cover cases in which a payment of owelty is impracticable, as, for instance, in the case of the division of a single lot and house between several parties; and in some decisions the desire of avoiding a sale, if possible, has been referred to as a reason for making the award."

Without doubt there are and there will be situations where owelty can be a useful, albeit old-fashioned, device for effecting a completely equitable partition of land. One should keep in mind, however, that it must function as a catalyst for partition, not as a substitute for it and, indeed, it has been held that the principle obtains only where the entire tract can be partitioned. *Hall v. Hall,* 250 Ala. 702, 35 So. 2d 681 (1948). In our judgment the cases do not support the proposal of the appellants. *Cf. Baltimore Gas & Electric Co. v. Bowers,* 221 Md. 337, 347, 157 A. 2d 610 (1960).

Maryland Code (1973 Repl. Vol.), Art. 21, § 14-107, empowers the court to decree a sale, and a division of the money arising from the sale among the parties, if it shall appear that the property "cannot be divided without loss or injury to the parties interested." While Judge Raine did not make a specific finding that the property could not be divided "without loss or injury" he did find as a fact that a division into eight shares, substantially equal in value, was "absolutely impossible." Obviously Judge Raine meant that a division would be impossible without hurting at least some of the appellees. That a one-eighth interest in this property would be virtually unmarketable requires no proof. Very likely the appellants would be the only available purchasers and as such they would surely be able to control the price. Since we think there is ample evidence to support such a finding we shall not disturb the result reached by Judge Raine.

> *Decree affirmed.*
>
> *Costs to be paid by the appellants.*