540 A.2d 827

**Richard WIMMER, et ux.**

v.

**George J. RICHARDS, et al.**

No. 1108, Sept. Term, 1987.

Court of Special Appeals of Maryland.

May 5, 1988.

Certiorari Denied Aug. 29, 1988.

David B. Ginsburg (William J. Blondell, Jr., Baltimore, and Cynthia E. Young, Annapolis, on the brief), for appellants.

S. Marc Land (Roy L. Mason and Donahue, Ehrmantraut & Montedonico, Chartered, on the brief for appellee, George J. Richards, Jr., M.D.), Timothy L. Mullin, Jr. (Mark D. Gately and Miles & Stockbridge on the brief for appellee, Richards, Hirschfeld & Associates, P.A.), (Ward B. Coe, III, Harry S. Johnson, Carol Z. Zuckerman and Whiteford, Taylor & Preston on the brief for appellee, Greater Baltimore Medical Center), Baltimore, for appellees.

Argued before MOYLAN, GARRITY and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

Richard and Gwendolyn Wimmer, husband and wife, appeal from a decision by the Circuit Court for Baltimore County dismissing their claim against appellees, George J. Richards, M.D., Richards, Hirschfeld and Associates, P.A., and the Greater Baltimore Medical Center, Inc. The court based its decision on appellants' failure to comply with the Health Care Malpractice Claims Act, Md. Cts. & Jud. Proc. Code Ann. § 3-2A-06 (1974, 1984 Repl.Vol. & 1987 Cum. Supp.). On appeal, we address the following issue:

"1. Was dismissal of appellants' action by the circuit court arbitrary and capricious, and therefore an abuse of discretion, when all parties, arbitration panel chairman, and circuit court have received copies of all pleadings, but the Health Claims Arbitration Office did not docket appellants' Notice of Rejection of Award?"

Since the case was disposed of on motions to dismiss, we must assume the truth of all well-pleaded facts in the complaint, as well as inferences which may reasonably be drawn from those well-pleaded facts. *Columbia Real Estate Title Ins. Co. v. Caruso,* 39 Md.App. 282, 283–84, 384 A.2d 468 (1978).[1] From that point of view, the facts were substantially as follows.

This appeal arises out of a Health Claims' arbitration proceeding filed by appellants against appellees, as health care providers.[2] The panel chairman rendered an award on liability in favor of appellees based on their respective motions to dismiss. Pursuant to the Health Care Malpractice Claims Act, the Director of the Health Claims Arbitration Office (HCAO) mailed copies of the award to all of the parties. Appellants received their copy of the award on February 2, 1987. To obtain and perfect judicial review of the award, appellants mailed a Notice of Rejection of Award and other pleadings [3] to the HCAO, the circuit court,

---

**1.** *Columbia* was decided under the rules in effect before July 1984 and thus the opinion speaks in terms of "demurrers" instead of "motions to dismiss." As of July 1, 1984, the demurrer was replaced by a motion to dismiss, the latter serving as the functional equivalent to the former. Thus, our standard of review remains the same. *Ungar v. State,* 63 Md.App. 472, 478 n. 5, 479 n. 6, 492 A.2d 1336 (1985).

**2.** Appellants originally filed a Statement of Claim against George J. Richards, M.D., in April of 1983. The Statement of Claim was later amended to include Richards, Hirschfeld & Associates, P.A., and Greater Baltimore Medical Center, Inc. Appellants alleged that appellees were negligent in administering excessive dosages of radiation to Mr. Wimmer during chemotherapy.

**3.** A Complaint, Prayer for Jury Trial, Action to Nullify Finding of Health Claims Arbitration Chairman, and a Motion to Vacate Award were included with the Notice of Rejection of Award.

and appellees. According to the certificates of service, these pleadings were mailed by appellants on February 26, 1987. Appellees, the circuit court, and the panel chairman received appellants' Notice of Rejection within the 30-day time period prescribed by § 3-2A-06(a) of the Health Care Malpractice Claims Act. The other pleadings, not at issue here, were received at the same time. While the HCAO did receive appellants' pleadings, including the Notice of Rejection, in a timely manner, the HCAO either misplaced or misfiled the pleadings as they did not appear on its docket.[4] Upon learning that the HCAO failed to docket the filing of the Notice of Rejection of Award, appellants sent them second copies of each document previously mailed. All the documents were docketed March 19, 1987, two weeks after the 30-day time period had run, with a notation "(copy of original 2-26-87)."

Appellees filed motions to dismiss based on appellants' failure to file their Notice of Rejection of Award with the HCAO within the statutory period. Appellees argued that strict compliance with the Health Care Malpractice Claims Act was required, and that appellants should have physically delivered the documents instead of merely placing them in the mail. Appellants do not claim that mailing the documents satisfied the filing requirements, but rather that the HCAO received and later misplaced or misfiled the documents. The trial court made no finding as to whether the HCAO actually did receive the documents. The circuit court granted appellees' motions to dismiss and appellants filed this appeal.

### —The Maryland Health Care Malpractice Claims Act—

The Maryland Health Care Malpractice Claims Act (the Act), provides the exclusive procedure by which a malpractice claim against a health care provider is initiated. A

---

4. The fact that the documents were misplaced or misfiled by the HCAO was not conceded by appellees, but is a legitimate inference from the evidence, most notably the certificate of service and an affidavit of receipt by the arbitration panel chairman.

claimant must submit his claim to an arbitration panel. Thus, proceeding to arbitration is a condition precedent to instituting a malpractice action in court. *Ott v. Kaiser-Georgetown Community Health Plan, Inc.*, 309 Md. 641, 526 A.2d 46 (1987). The arbitration panel determines the issue of liability with respect to the claim. If the panel determines that the health care provider is liable, damages are assessed, itemized and apportioned. § 3–2A–05(e). The arbitration panel's decision becomes final and binding on the parties if neither party seeks to reject or modify it within the statutory time limits. § 3–2A–05(i).

Section 3A–2A–06 of the Act specifies procedures for seeking judicial review [5] if either party is unsatisfied with the arbitration panel's decision. The court proceeding is called an "action to nullify arbitration award." *See* Rules BY1–BY5. Before instituting the court action, a party must give notice that he or she is rejecting the arbitration panel's determination. Section 3–2A–06(a) of the Act, which governs the procedures to follow to reject a health claims arbitration award, provides in pertinent part:

"(a) *Rejection of award.*—A party may reject an award for any reason. A notice of rejection must be filed with the Director and the arbitration panel and served on the other parties or their counsel within 30 days after the award is served upon the rejecting party, or, if a timely application for modification or correction has been filed within 10 days after a disposition of the application by the panel, whichever is greater."

Md.Cts. & Jud.Proc. Code Ann. § 3–2A–06(a) (1974, 1984 Repl.Vol., 1987 Cum.Supp.).

The Maryland Rules supplement the Act, making an action to nullify an arbitration award a two-step process. First, the rejecting party must file notice of the action to nullify with the clerk of the court. Rule BY2(a). Second, a

---

**5.** Section 3–2A–06(b)(2) provides that either party in the circuit court action may elect to have the case tried before a jury.

"declaration" must be filed by the aggrieved party (the claimant before the HCAO). Rule BY4(a).[6]

## —The Applicable Standard of Compliance—

■ Appellees contend that strict compliance with all procedural requirements of the Act is required to secure judicial review of an adverse arbitration award. They claim that appellants' failure to file a notice of rejection of award with the Director of HCAO, as evidenced by the missing docket entry, warranted dismissal of the action by the court. Appellants, on the other hand, argue that the HCAO *did* receive the required documents; therefore, there was actual compliance with § 3–2A–06(a). Alternatively, if we do not hold there was actual compliance, appellants contend that their "substantial compliance" with § 3–2A–06(a) merits judicial review of their medical malpractice claim.

In the last several years, decisions of health claims arbitration panels have precipitated a burgeoning of litigation and appellate review. A significant number of cases have dealt with the procedure litigants must follow to perfect an appeal of an arbitration award and the applicable standard of compliance.

In two early cases, *Bishop v. Holy Cross Hospital,* 44 Md.App. 688, 410 A.2d 630 (1980) and *Schwartz v. Lilly,* 53 Md.App. 318, 452 A.2d 1302 (1982), the claimants attempted to by-pass arbitration by filing their complaints with the circuit court before submitting them to the HCAO. *Bishop,* 44 Md.App. at 689, 410 A.2d 630; *Schwartz,* 53 Md.App. at 319, 452 A.2d 1302. We held in both cases that dismissal was warranted based on the litigants' failure to utilize the arbitration process as required by the Act. *Bishop,* 44 Md.App. at 692, 410 A.2d 630; *Schwartz,* 53 Md.App. at 324, 452 A.2d 1302.

---

6. The declaration must contain the allegations which would entitle the aggrieved party to relief. The party making the claim against the health care provider becomes the plaintiff in the court action regardless of whether he or she was the rejecting party. Rule BY3.

*Tranen v. Aziz,* 59 Md.App. 528, 476 A.2d 1170 (1984), *aff'd,* 304 Md. 605, 500 A.2d 636 (1985), further tightened the standard of compliance by requiring litigants not only to submit the malpractice dispute to arbitration but also to follow the special statutory procedures prescribed by the Act. In *Tranen,* appellants failed to file both a rejection of award and an action to nullify award[7] as required by § 3–2A–06. This Court held that *strict* compliance with the statutory scheme established for appeals of medical malpractice arbitration awards was required. *Tranen,* 59 Md. App. at 535, 476 A.2d 1170. The Court of Appeals affirmed our decision, restating the necessity for strict compliance. *Tranen,* 304 Md. 605, 614, 500 A.2d 636.[8]

Erosion of the strict compliance standard announced in *Tranen* began in *Mitcherling v. Rosselli,* 61 Md.App. 113, 484 A.2d 1060 (1984), *aff'd* 304 Md. 363, 499 A.2d 476 (1985). In that case, the appellant-claimant failed to send a Notice of Rejection to each of the members of the arbitration panel in violation of § 3–2A–06(a).[9] This Court affirmed the

---

7. Section 3–2A–06(b) requires the claimant to file an action to nullify award. Failure to timely file the action in court constitutes a withdrawal of the notice of rejection of the arbitration award required by § 3–2A–06(a). Md.Cts. & Jud.Proc.Code Ann. § 3–2A–06(b) (1974, 1984 Repl.Vol., 1987 Cum.Supp.). In the case *sub judice,* appellees do not challenge appellants' compliance with this provision.

8. McAuliffe, J., concurring in the result, wrote separately to express the view that *Tranen* did not foreclose consideration of the principle of substantial compliance in future cases concerning the procedural requirements for initiating a court action following arbitration. Tranen, 304 Md. at 614–15.

9. In 1976, when § 3–2A–06(a) was first enacted, it provided that "[a] notice of rejection must be filed *with the arbitration panel....*" (Emphasis added.) Pursuant to § 3–2A–03(b)(3), which authorizes the Director of the HCAO to "adopt reasonable rules and regulations," general regulations of the HCAO were adopted in 1976. The regulation specifically dealing with rejection of an award required filing the rejection "with the Director" and not with the panel. COMAR 01.03.-01.14. Finally, § 3–2A–06 was amended in 1979 to require that the notice of rejection be filed "with the Director and arbitration panel." In *Mitcherling,* the Court was asked to interpret and reconcile those provisions.

refusal by the circuit court to dismiss the appeal, holding that the claimant had "substantially complied" with the statutory provisions.[10] *Mitcherling,* 61 Md.App. at 121, 484 A.2d 1060. We also noted that technical irregularities will not be permitted to deprive a party of an opportunity to assert his or her legal rights when the other party has not been prejudiced. *Mitcherling,* 61 Md.App. at 121, 484 A.2d 1060. The Court of Appeals held that filing the notice with the Director constituted literal compliance and thus expressly declined to reach the question of substantial compliance. *Mitcherling,* 304 Md. 363, 367, 499 A.2d 476 (1985).

That same year, this Court decided two more cases consistent with the "substantial compliance" standard. In the first case, *Osheroff v. Chestnut Lodge, Inc.,* 62 Md.App. 519, 490 A.2d 720 *cert. denied,* 304 Md. 163, 497 A.2d 1163 (1985), the claimant incorrectly filed a pleading in the circuit court entitled, "Action to Nullify HCA Award" instead of filing a "declaration" as required by Rule BY4.[11] We held that, despite the deficiencies in the pleadings, the document filed "substantially constituted" a declaration within the meaning of the Rules and the Act. *Osheroff,* 62 Md.App. at 525, 490 A.2d 720.

In the second case, *Brothers v. Sinai,* 63 Md.App. 235, 492 A.2d 656 (1985), *aff'd sub nom Cherry v. Brothers,* 306 Md. 84, 507 A.2d 613 (1986), we rejected a claim that filing copies of pleadings captioned for the HCAO in the circuit court warranted dismissal. Our decision was based on the fact that appellees were not prejudiced or misled by appellants' failure to comply fully with the statutory procedures.

---

**10.** In *Mitcherling,* the notice of rejection was served on opposing counsel and filed with the Director of the HCAO. The action to nullify was also properly filed. *Mitcherling,* 61 Md.App. at 115, 484 A.2d 1060.

**11.** In *Osheroff v. Chestnut Lodge, Inc.,* 62 Md.App. 519, 490 A.2d 720, *cert. denied,* 304 Md. 163, 497 A.2d 1163 (1985), we noted the disparity between Rule BY4, which requires a "declaration," and Rule 2–302, which provides that all initial pleadings be styled "complaints." *Osheroff,* 62 Md.App. at 524 n. 7, 490 A.2d 720.

*Brothers v. Sinai,* 63 Md.App. at 238, 492 A.2d 656. The Court of Appeals, affirming our decision, held that the papers appellees filed fully complied with the prescribed statutory procedures, stating, "we need not address the role, if any, the prejudicial effect of noncompliance plays in this statutory scheme." *Cherry,* 306 Md. at 86–87, 507 A.2d 613.

In *Ott v. Kaiser–Georgetown Community Health Plan Inc.,* 309 Md. 641, 526 A.2d 46 (1987), the Court of Appeals resolved the uncertainty over substantial versus strict compliance and the role prejudice would play. In *Ott,* the claimant wished to reject an arbitration award in favor of a health care provider, and to invoke federal court jurisdiction. Instead of filing the complaint (or "declaration" as it is referred to in Rule BY4) in the same court where notice of the action to nullify was originally filed, a complaint was filed in federal district court. The claimant also filed a one-page pleading in the correct state circuit court, which stated that a complaint had been filed in federal court. The circuit court subsequently dismissed claimants' action for failure to comply with Rule BY4. *Ott,* 309 Md. at 644–45, 426 A.2d 46.

The Court of Appeals reversed despite a finding that the claimant did not fully comply with the Rules. Instead, the Court held that *"substantial compliance* with the Rules is sufficient if the purpose of the Rules is gratified." *Ott,* 309 Md. at 651, 526 A.2d 46 (emphasis added). The Court noted that all of the required documents had been served in timely fashion on the health care provider, and that the provider could not have been misled about the claimant's rejection of the award or his intent to pursue a malpractice action against it. *Ott,* 309 Md. at 652, 526 A.2d 46.

Despite the clear dilution of the standard announced in *Tranen,* appellees contend that the strict compliance standard governs the case *sub judice* and thus dismissal was warranted. We do not agree.

The facts in *Tranen* reveal that the *Tranen* appellants' actions amounted to a gross departure from the prescribed statutory procedures. In *Tranen*, appellants admitted that they never attempted to file a notice of rejection or an action to nullify with the Director of the HCAO. In addition, they did not comply with § 3–2A–06(a) because they did not serve the other parties with notice of rejection. Finally, they failed to file an action to nullify the award with the circuit court as required by Rule BY2. In other words, the *Tranen* appellants made no attempt to comply with the required procedures.

█ In the case *sub judice*, appellants' certificates of service confirm their claim that the Director of the HCAO, the trial court and the other parties were sent all the required documents in a timely manner. The panel chairman, by affidavit, stated that he received both the notice of rejection and the action to nullify. Appellees also concede that the circuit court received the necessary papers and that these papers were properly served. Moreover, upon discovering that the HCAO had not entered the papers on their docket, appellants immediately sent the HCAO Director second copies of all the papers, bringing them in full compliance with the statute, albeit two weeks after the due date.

Appellees do not claim that they were in any way prejudiced by appellants' action. Any error did not affect appellees' substantial rights because they were not misled. *Ott*, 309 Md. at 652, 526 A.2d 46; *Cherry*, 306 Md. at 91, 507 A.2d 613. Appellees could not have questioned appellants' rejection of the award or their intent to pursue a malpractice action against them. In fact, appellees did not file their motions to dismiss until after they received their notice of rejection.

Recognizing the important role played by the Director of the HCAO, we emphasize that the notice of rejection must be filed with that office. Undeniably, any attempt to bypass the Director is noncompliance with the Act. In the case at bar, taking the facts in the light most favorable to

appellants, we cannot say that they failed to comply with the statute.

In the case *sub judice,* the trial court failed to make a finding as to whether or not the HCAO received the notice of rejection and subsequently lost or misplaced it. If the HCAO did, in fact, actually receive these documents, appellants have fully complied with the statute. It only becomes necessary to consider whether the purpose of the statute was otherwise fulfilled by substantial compliance if the HCAO did not receive the documents within the statutory time.[12] We hold that in the absence of such a finding the trial court abused its discretion in granting the motions to dismiss. Thus, we remand the case for a finding as to whether the notice of rejection was, in fact, received by the Director of the HCAO in a timely manner.

JUDGMENT VACATED.

CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEES.

---

12. Appellants do not claim that *mailing* the notice of rejection satisfies § 3–2A–06(a) and thus we do not address that issue.