638 A.2d 115

Lydia **CURRY**

v.

**HILLCREST CLINIC, INC.**

**No. 546, September Term, 1993.**

Court of Special Appeals of Maryland.

March 14, 1994.

478

John Amato, IV (Goodman, Meagher & Enoch, on the brief) Baltimore, for appellant.

R. Wayne Pierce (Niles, Barton & Wilmer, on the brief) Baltimore, for appellee.

Argued before BISHOP, FISCHER and DAVIS, JJ.

BISHOP, Judge.

Appellant/Cross–Appellee, Lydia T. Curry ("Curry"), and Darlene Alston, Curry's mother and next friend, filed an amended claim in the Health Claims Arbitration Office ("HCAO") against Dr. Sheo P. Sharma ("Sharma") and appellee/cross-appellant, Hillcrest Clinic, Inc. ("Hillcrest"), alleging

medical malpractice. After Hillcrest was served with process and failed to file a response, Curry moved for an order of default, which the Director of the HCAO ("Director") entered against Hillcrest. Hillcrest failed to respond to the notice of order of default, and, upon Curry's motion, the Director entered an award by default against Hillcrest. Hillcrest filed a motion to strike the award by default, which, after a hearing, the HCAO panel chair ("Chairperson") denied. At the conclusion of a panel hearing on the merits of Curry's claim against Sharma, the panel concluded that Sharma was negligent, but that his negligence was not the proximate cause of Curry's injuries. The Chairperson further ruled that, despite Hillcrest's default, Sharma's successful defense could inure to the benefit of Hillcrest. Judgment of no liability was entered as to both Sharma and Hillcrest.

Curry filed a notice of rejection with the Director. Curry also filed (1) an action to nullify the award in the Circuit Court for Baltimore County, along with (2) a motion to enter a default order against Hillcrest for willful failure to answer the claim and failure to satisfy a condition precedent to judicial review, and (3) a petition to vacate the panel award, in which she alleged that the panel exceeded its powers by allowing Sharma's successful defense to inure to the benefit of Hillcrest. Hillcrest filed a motion to dismiss the action, alleging that Curry filed the notice of rejection prematurely and that the circuit court did not have jurisdiction over the case. The circuit court denied Curry's and Hillcrest's motions, granted Curry's petition and vacated the panel award, and directed that the case proceed in the circuit court. At the conclusion of a jury trial, the jury rendered a defendants' verdict. Curry filed a timely notice of appeal to this Court, and Hillcrest filed a timely notice of cross-appeal.

### Issues

Curry and Hillcrest raise three issues, which we reorder and restate as follows:

I.   Does the circuit court have jurisdiction to entertain an appeal from an award of the HCAO when the rejecting

party files a notice of rejection with the Director after the award is entered on the HCAO docket, but before the award is served on the rejecting party?

II.   Did the circuit court err when it ruled that Sharma's successful defense could not inure to the benefit of Hillcrest?

III.   When a health care provider intentionally defaults at the HCAO level, is it precluded from litigating liability *de novo* in the circuit court, *i.e.,* does its failure to have the panel determine its liability mandate that a default judgment likewise be entered at the circuit court level?

## *Facts*

This medical malpractice action arises out of Sharma's failed attempt to abort Curry's pregnancy while working at Hillcrest's facility in Baltimore County. Although the particular facts of this case are tragic, and hotly disputed by the parties, they are not relevant to the disposition of this appeal. We shall, however, give a chronology of the HCAO and circuit court proceedings in order to provide a framework within which to discuss the issues.

The unique procedural history of this case cannot be understated. Curry filed her original claim with the HCAO on July 19, 1989. Curry later filed an amended claim, which was served on Hillcrest on March 5, 1990. In the amended claim Curry averred in count one:

1.   During the morning hours of March 29, 1988 [Curry], then 17 years old, presented herself at the defendant's facility ... for the purpose of getting an abortion. [Curry] was pregnant carrying a 16½—17½ week old fetus. On being received at the clinic, the staff, under the direction and control of the defendant, [Sharma], did a sonogram and inserted a dilapan into [Curry]'s cervix which remained for approximately two hours. Thereafter the defendant, Sharma, removed the dilapan and attempted to dilate the cervix. Although the defendant had difficulty in this procedure, he nevertheless proceeded with the attempted abortion by

inserting a suction catheter. Because the patient was uncomfortable and was moving around on the table, the defendant stopped the procedure and sent the patient home with instructions that she report to the ... East Baltimore Medical Center the following morning for completion of the abortion. In the course of the attempted abortion at Hillcrest, the defendant, [Sharma], perforated his patient's uterus and colon. Dr. Sharma and the staff at Hillcrest were fully aware that the attempted abortion had resulted in serious bodily harm to the plaintiff ... in the manner set out above. Despite this the plaintiff was not told of the nature and extent of the harm inflicted by the defendants at the Hillcrest Clinic. On March 30, 1988 the plaintiff appeared at the East Baltimore Medical Center where she was admitted. At the East Baltimore Medical Center the claimant was examined, given medication and sonogram. The patient became tachycardic. At John Hopkins Hospital, Dr. Karin Blackmore attempted, under anesthesia, a dilation and suction evacuation. During the course of this procedure it was suspected that the uterus and the colon had been cut at Hillcrest and thereupon Dr. Ira Horowitz of the GYN and Oncology Services was called for immediate consultation. The decision was made to perform an exploratory laparotomy. In the early morning hours of March 31, 1988 Dr. Horowitz, after diagnosing a perforated uterus and trauma to the rectosigmoid, completed the uterus evacuation, repaired the uterine defect, fashioned a Hartman's Pouch and completed a rectosigmoid colostomy. [Curry] remained a patient in Johns Hopkins Hospital until April 12, 1988....

2. Under the standards of medical and obstetrical care, the defendants, [Sharma] and the Staff of Hillcrest Clinic, Inc., are charged with the responsibility of performing a safe and infection-free abortion and with the responsibility of follow-up care with particular reference to any complications that might develop during the abortion procedure. The defendants are also responsible for choosing, and properly advising their patients of, the proper method of abor-

tion and the proper facility wherein the abortion should be carried out that provides the least health hazard for her, based on physical condition and length of pregnancy.

3. It is further asserted that the defendants, having undertaken the obstetrical and gynecological care with regard to [Curry], had the responsibility to make themselves aware of any complications that might have developed during the abortion procedure, such as traumatizing the uterus and colon and thereafter of initiating and skillfully executing such medical procedures as were necessary to safeguard the life and health of their patient. In violation of the standards of medical and obstetrical care, the defendants jointly and severally were negligent in their failure to choose the proper method and facility for the abortion, in their failure to execute the abortion without damage to the uterus and colon, and in [their] failure to skillfully initiate and execute proper remedial procedures once the complication was recognized or should have been recognized. As a direct result, the claimant suffered severe and permanent damage. The defendants violated the standard of care:

a. by attempting to perform a suction abortion on a patient who was 16½ weeks pregnant;

b. by cutting the uterus and colon while attempting a suction abortion;

c. by not sending [Curry] for further treatment immediately instead of telling her to report for further care the next day knowing that he had damaged her uterus and colon;

As a result of this violation of the standard of care, [Curry] had to have a colostomy. The clinic is liable under the doctrine of respondent superior for the actions of Dr. Sharma.

4. [Curry] claims damages for her permanent injuries, her past, present and future physical pain and mental anguish, medical expenses and economic loss. The negligence complained of occurred in Baltimore County where

venue is sought. The amount in controversy exceeds $10,-000.00.

5. Defendant Sharma, maliciously, deliberately and falsely reported, or did so with such reckless disregard for the truth and Curry's condition so as to constitute malice, to Drs. Brown and Blackmore of East Baltimore Medical Center/Hopkins, that he never inserted a suction catheter into Curry's person, that he had not perforated Curry's uterus and colon, that 16½ weeks was within his safe "cut-off" for performing a suction abortion but that because Curry was "moving around" she needed a saline abortion under hospital conditions. The Hopkins staff relied on this false information in their decision not to bring Curry in immediately rather than the next day. Dr. Sharma made these false statements with the intent of covering up his actions and in so doing, compromised Curry's recovery. Claimant therefore seeks punitive damages in an amount in excess of $10,000.00.

The contents of counts two, three, and four are not relevant to this appeal.

On April 26, 1990, and again on May 16, 1990, before the HCAO, Curry moved for an order of default, as Hillcrest had failed to file a response to the amended claim. An order of default was entered on May 14, 1990 and notice of that order was mailed to all parties on May 21, 1990. On June 15, 1990, Curry moved for the entry of an award by default, which the Director entered on June 19, 1990.

On July 6, 1990, an entity known as Hillcrest Clinic, P.A. filed a motion to strike the award by default. In that motion, Hillcrest argued that the party sued, Hillcrest Clinic, Inc., had ceased to exist and that, since January 1, 1988, its name was Hillcrest Clinic, P.A. Bonnie Bailey, Hillcrest's administrator, asserted in an affidavit that Hillcrest's resident agent was "misled" in keeping track of the suit papers by virtue of the fact that the suit was against Hillcrest Clinic, Inc., an "entity that no longer exists." Curry opposed the motion and submitted State Department of Assessments and Taxation ("SDAT")

documents indicating that no such name change had ever occurred. Hillcrest filed a reply, which included a second affidavit of Ms. Bailey. Ms. Bailey affirmed that she was "shocked to learn that ... Hillcrest Clinic, Inc.[ ] was a corporation of record and that there was no record of Hillcrest Clinic, P.A." According to Ms. Bailey, Hillcrest had long operated and held itself out to the public as Hillcrest Clinic, P.A., believing in good faith that its name had been changed. Ms. Bailey concluded that Hillcrest's lawyer had either misunderstood or overlooked Hillcrest's instruction to effect that change.

After a hearing on the motion to strike the order of default, the Chairperson denied Hillcrest's motion by opinion and order in which she rejected Hillcrest's assertions of good faith and equitable excuse for failure to plead:

Dr. Ward's [Hillcrest's president's] reliance on the name "Hillcrest Clinic, P.A." to shield the entity from claims against Hillcrest Clinic, Inc. suggests neither ordinary diligence nor good faith. By necessary implication, Dr. Ward made a conscious decision not to respond to the claim because he thought that Hillcrest Clinic, P.A. would not have liability for a claim filed against Hillcrest Clinic, Inc. But even a cursory reading of the claim reveals that [Curry] asserted she was injured while being treated at Hillcrest Clinic by Sharma. Dr. Ward knew or should have known that Sharma was associated with Hillcrest and that [Curry] was a former patient who claimed to have had problems. Neither ordinary diligence nor good faith would permit resting on the belief that a name change, however effectuated, would cleanse Hillcrest of potential liability. Regardless of when and how the corporate identity changed, any reasonable person would perceive that there was a potential liability problem arising from the treatment at Hillcrest.

The only conclusion that can be drawn from Hillcrest's admissions is that Hillcrest Clinic, P.A. was attempting to use a technicality to shield itself from claims. There is no legal or logical basis for a claim that a name change would absolve a corporate entity of potential liability. Even when

Hillcrest finally participated in this action, it was not candid about its status and maintained the facade that Hillcrest Clinic, P.A. was not liable for a judgement against Hillcrest Clinic, Inc.[6] ...

Hillcrest's assertion that the default occurred because the summons and amended [claim] were temporarily lost is without merit. Dr. Ward received numerous pleadings during March and April 1990 in addition to being personally served with the Amended [Claim].... Dr. Ward also received a courtesy copy of the claim before it was served.... Further, other documents were mailed to the [clinic] address. It defies reason to justify the striking [sic] default on the claim that Dr. Ward temporarily lost track of the summons and Amended [Claim] given the receipt of these other documents. The fact is, Hillcrest intentionally ignored repeated communications from the parties and HCAO.

Hillcrest's claim that it has a [sic] equitable excuse for failing to plead based on temporarily losing the summons and Amended [Claim], the 'mistake' as to corporate identity and the failure to receive the Notice of Order of Default is without objective factual support and provides no legal basis for striking the default. Hillcrest did not proceed in good faith as to the issue of corporate identity and did not respond with ordinary diligence.[7]

6 Hillcrest's position that it [sic] there was a substantial basis for its belief that it changed its organization to a 'P.A.' ... is without support. The Form 1 on record with the [SDAT], Corporate Assessment Division, a copy of which was submitted by Claimants, reveals that [, on April 15, 1989,] Hillcrest filed as Hillcrest Clinic, Inc. This document must be signed by a corporate officer under the penalties of perjury. Dr. Ward is the only listed officer who would have had authority to sign. The signature page was not released to Claimants by SDAT and thus is not part of the record.

Hillcrest supplied certain documents showing use of the name with the 'P.A.' but there is no indication from the documents of the use of 'P.A.' prior to 1990. Hillcrest did not produce Articles of Incorporation, Amendments to Articles of Incorporation, Articles of Dissolution, Form 1, tax returns, or any documents which could have legally and positively established its corporate identity. Further, the documents Hillcrest did produce had no legal significance. It appears that

Hillcrest was deliberately obscuring its status to bolster its arguments attacking the default.

7  Hillcrest did not respond to the June 19 'Award' for sixteen days. It did not even admit the true corporate identity until fifty-eight days after the Award was entered.

[Footnotes six and seven are as they appear in the quoted document]

Following this ruling, the case proceeded to a panel hearing, which took place from February 11 to February 15, 1991. Hillcrest moved *in limine* to benefit from Sharma's defenses on the merits under the *"Lingan"* doctrine. The Chairperson held the motion *sub curia* until after the evidence was taken and proposed panel instructions were submitted. On February 15, 1991, the Chairperson signed a Final Opinion and Order ("Final Order") which reads:

The Panel, after duly considering all of the evidence presented in the case made the following findings:

1) Defendant Sharma was not negligent in:

a) attempting the abortion while Ms. Curry was 16.5 weeks pregnant;

b) injuring the colon while attempting the abortion;

c) failing to send Ms. Curry for further treatment immediately when he knew or should have known that he had damaged her uterus and colon.

2) Defendant Sharma was negligent in failing to carefully and fully inform the subsequent treating physicians.

3) The negligence was not the proximate cause of Ms. Curry's injuries.

Accordingly, ***JUDGEMENT OF NO LIABILITY IS ENTERED FOR DEFENDANT SHARMA.***

Given that Defendant Hillcrest's *Motions in Limine to Benefit from Sharma's Defenses and to Limit Damages* were orally granted at the hearing and that the panel found that Ms. Curry's injuries were not the proximate cause of negligence caused by Defendants, ***FINAL JUDGEMENT OF NO LIABILITY IS ENTERED FOR DEFENDANT HILLCREST.***

It is so ***ORDERED,*** this 15th, Day of February, 1991.

On that date the Chairperson also signed an Arbitration Panel Determination ("APD") in which the Chairperson stated that there was a finding of "no liability as to Defendants" and that costs were to be "split evenly between the parties."

The Final Order was first entered on the HCAO docket on February 21, 1991. Curry also received a copy of the order on that date. On February 22, 1991, Curry's notice of rejection and notice of action to nullify HCA award (which Curry mailed the prior day) were entered on the dockets in the HCAO, and the circuit court, respectively. The APD was entered on the HCAO docket on February 25, 1991, along with another copy of the Final Order. On February 27, 1991, the Director mailed the APD to all parties. In a cover letter, the Director informed counsel that the "Award of the panel is final and binding on all parties" and that the thirty day period for filing an appeal is "computed from the day you received this notice." Curry received the Director's service of the award on March 1, 1991.

Curry's circuit court complaint, which was filed along with the notice of action to nullify HCA award, contains four counts. The allegations in count one were taken verbatim from count one of the amended claim. Curry alleged in count two that Sharma's negligence was the direct and proximate cause of her injuries, and in count three that Hillcrest, "acting through its agents, servants and/or employees, was independently negligent ... over and above, or distinct from, the negligence of ... Sharma" and that that negligence was also the direct and proximate cause of Curry's injuries.

After the trial court ruled on Curry's and Hillcrest's motions and Curry's petition (the rulings under review in this appeal), the case was tried before a jury. At various points in the trial, Curry renewed her position that Hillcrest should not be allowed to defend on liability, *i.e.*, was not entitled to *de novo* review on liability, but should only be allowed to contest damages. Further, Curry objected to the court's refusal to give her proposed jury instructions on this issue. Hillcrest continued to assert that the default at the HCAO level did not carry over to the circuit court level. On a special verdict form

the jury concluded that Sharma was negligent, but that his negligence did not cause Curry's injuries. The jury also answered a separate question about Hillcrest's independent negligence (as opposed to *respondeat superior* liability for Sharma's actions) in the negative.

## *Discussion*

### I

#### *The Premature Notice of Rejection*

We address first Hillcrest's contention that Curry filed the notice of rejection prematurely and, thus, the circuit court did not have jurisdiction to entertain the appeal. We shall conclude that, despite the premature nature of the notice, Curry substantially complied with the Health Care Malpractice Claims Act ("the Act") and is therefore entitled to judicial review of the HCAO award.

The Act provides: "Subject to § 3–2A–06 of this subtitle, the award of the panel shall be final and binding on the parties." Md.Cts. & Jud.Proc.Code Ann. (hereinafter "CJ") § 3–2A–05(i) (1989). Under CJ § 3–2A–06(a), a party who wishes to obtain judicial review of an award must file a "notice of rejection ... with the Director and the arbitration panel and serve[ it] on the other parties or their counsel *within 30 days after the award is served upon the rejecting party....*" (Emphasis added). Hillcrest argues that, because the award was served on Curry on March 1, 1991, Curry had from March 1 until March 31, 1991 to file a notice of rejection; thus, her February 22, 1991 notice of rejection was "fatally premature because the Director had not served the award on Curry by that date." Curry, on the other hand, contends that (1) CJ § 3–2A–06(a) only sets an outside limit for filing the notice of rejection, *i.e.,* no later than 30 days after the award is served upon the rejecting party; (2) "Hillcrest deliberately maneuvered [Curry's counsel] into this absurd position"; and, (3) in any event, Curry substantially complied with the provisions of CJ § 3–2A–06(a). We reject Curry's first contention and hold that she did not comply strictly with CJ § 3–2A–06(a). The plain language of CJ § 3–2A–06(a) clearly requires that the notice of rejection be filed within thirty days *after* service of

the award. We nevertheless conclude that Curry did comply substantially with that requirement and was therefore entitled to judicial review. It is therefore unnecessary to address Curry's "quasi-estoppel" claim. We explain.

In *Wimmer v. Richards,* 75 Md.App. 102, 540 A.2d 827, *cert. denied,* 313 Md. 506, 545 A.2d 1344 (1988), Judge Rosalyn B. Bell, writing for this Court, surveyed the development of the strict compliance and substantial compliance standards as they relate to the procedure to obtain judicial review of awards under the Act.

In two early cases, *Bishop v. Holy Cross Hospital,* 44 Md.App. 688, 410 A.2d 630 (1980) and *Schwartz v. Lilly,* 53 Md.App. 318, 452 A.2d 1302 (1982), the claimants attempted to by-pass arbitration by filing their complaints with the circuit court before submitting them to the HCAO. We held in both cases that dismissal was warranted based on the litigants' failure to utilize the arbitration process as required by the Act.

*Tranen v. Aziz,* 59 Md.App. 528, 476 A.2d 1170 (1984), *aff'd,* 304 Md. 605, 500 A.2d 636 (1985), further tightened the standard of compliance by requiring litigants not only to submit the malpractice dispute to arbitration but also to follow the special statutory procedures prescribed by the Act. In *Tranen,* appellants failed to file both a rejection of award and an action to nullify award as required by § 3–2A–06. This Court held that *strict* compliance with the statutory scheme ... was required....

Erosion of the strict compliance standard announced in *Tranen* began in *Mitcherling v. Rosselli,* 61 Md.App. 113, 484 A.2d 1060 (1984), *aff'd,* 304 Md. 363, 499 A.2d 476 (1985). In that case, the appellant-claimant failed to send a Notice of Rejection to each of the members of the arbitration panel in violation of § 3–2A–06(a). This Court affirmed the refusal by the circuit court to dismiss the appeal, holding that the claimant had "substantially complied" with the statutory provisions. We also noted that technical irregularities will not be permitted to deprive a party of an opportunity to assert his or her legal rights when the other party has not

been prejudiced. The Court of Appeals held that filing the notice with the Director constituted literal compliance and thus expressly declined to reach the question of substantial compliance.

That same year, this Court decided two more cases consistent with the "substantial compliance" standard. In the first case, *Osheroff v. Chestnut Lodge, Inc.*, 62 Md.App. 519, 490 A.2d 720 *cert. denied*, 304 Md. 163, 497 A.2d 1163 (1985), the claimant incorrectly filed a pleading in the circuit court entitled, "Action to Nullify HCA Award" instead of filing a "declaration" as required by Rule BY4. We held that, despite the deficiencies in the pleadings, the document filed "substantially constituted" a declaration within the meaning of the Rules and the Act.

In the second case, *Brothers v. Sinai*, 63 Md.App. 235, 492 A.2d 656 (1985), *aff'd sub nom. Cherry v. Brothers*, 306 Md. 84, 507 A.2d 613 (1986), we rejected a claim that filing copies of pleadings captioned for the HCAO in the circuit court warranted dismissal. Our decision was based on the fact that appellees were not prejudiced or misled by appellants' failure to comply fully with the statutory procedures. The Court of Appeals, affirming our decision, held that the papers appellees filed fully complied with the prescribed statutory procedures, stating, "we need not address the role, if any, the prejudicial effect of noncompliance plays in this statutory scheme."

In *Ott v. Kaiser–Georgetown Community Health Plan Inc.*, 309 Md. 641, 526 A.2d 46 (1987), the Court of Appeals resolved the uncertainty over substantial versus strict compliance and the role prejudice would play. In *Ott*, the claimant wished to reject an arbitration award in favor of a health care provider, and to invoke federal court jurisdiction. Instead of filing the complaint . . . in the same court where notice of the action to nullify was originally filed, a complaint was filed in federal district court. The claimant also filed a one-page pleading in the correct state circuit court, which stated that a complaint had been filed in

federal court. The circuit court subsequently dismissed claimants' action for failure to comply with Rule BY4.

The Court of Appeals reversed despite a finding that the claimant did not fully comply with the Rules. Instead, the Court held that *"substantial compliance* with the Rules is sufficient if the purpose of the Rules is gratified." The Court noted that all of the required documents had been served in timely fashion on the health care provider, and that the provider could not have been misled about the claimant's rejection of the award or his intent to pursue a malpractice action against it.

*Id.* 75 Md.App. at 108–11, 540 A.2d 827 (citations and footnotes omitted).

In *Wimmer,* the appellants, claimants in a Health Claims arbitration proceeding, mailed a notice of rejection and other pleadings to the HCAO within the thirty day period following service of the award; however, the pleadings were not immediately entered on the HCAO docket. When the appellants discovered this, they immediately sent the Director second copies of all the pleadings. Those pleadings were entered on the docket, albeit two weeks after the expiration of the thirty day period. The circuit court dismissed their appeal based on their failure to comply with CJ § 3–2A–06(a). We vacated the court's decision and remanded the case for a finding as to whether the notice of rejection was, in fact, received by the Director within the statutory period. We concluded that if the HCAO received the documents within the thirty day period, but either misplaced or misfiled them, then the appellants fully complied with the statute. We also intimated that, even if the HCAO did not receive the documents within the statutory time, appellants nevertheless substantially complied with the statute.

Appellees do not claim that they were in any way prejudiced by appellants' action. Any error did not affect appellees' substantial rights because they were not misled. Appellees could not have questioned appellants' rejection of the award or their intent to pursue a malpractice action against them. In fact, appellees did not file their motions to dismiss until after they received their notice of rejection.

> Recognizing the important role played by the Director of the HCAO, we emphasize that the notice of rejection must be filed with that office. Undeniably, any attempt to bypass the Director is noncompliance with the Act.

*Id.* at 112, 540 A.2d 827 (citations omitted). Thus, in *Wimmer,* this Court recognized the application of the substantial compliance doctrine to the Act's *statutory* requirements for judicial review of awards.

In the case *sub judice,* the panel made a determination as to liability and costs on February 15, 1991. Although the Final Order did not address the apportionment of costs, the APD did. Curry received a copy of the Final Order on February 21, 1991, the day before the notice of rejection was entered on the HCAO docket. The APD, however, was not entered on the docket until February 25, 1991. In other words, the only document that addressed both liability and costs was not entered on the docket until after the notice of rejection. Hillcrest argues:

> In health claims, the panel *must* submit a single award that addresses the merits *and* costs. COMAR 01.03.01.12 E(1). Without this omnibus judgment, no appealable "award" exists. § 3–2A–05(f). Until costs were assessed in the [APD], there was no "award." *Alfred Munzer[, M.D., P.A. v. Ramsey],* 63 Md.App. [350,] 359 [492 A.2d 946] [ (1985) ]. Such an "award" was not entered until the [APD] was docketed three days after plaintiff's notice of rejection.

Thus, Hillcrest not only argues that Curry filed the notice of rejection before March 1, 1991, in contravention of CJ § 3–2A–06(a), but also that Curry filed the notice of rejection before February 25, 1991, when the APD was first entered on the docket. We agree with Hillcrest that (1) under CJ § 3–2A–06(a), Curry should have filed the notice of rejection between March 1 and March 31, 1991, and (2) the only "award" from which Curry could "appeal" was the APD that was entered on the HCAO docket on February 25, 1991, three days after Curry filed the notice of rejection. For reasons which follow, however, Curry is nevertheless entitled to judicial review.

CJ § 3–2A–05(i) provides in pertinent part: "After the time for either rejecting or modifying the award has expired the Director may, or, when requested by any party, shall file a copy of the award with the circuit court having proper venue . . . and the court shall confirm the award." Thus, the notice of rejection clearly functions to inform the Director that the rejecting party desires to seek judicial review of the award. In that event, the Director will not file a copy of the award with the circuit court at the request of a non-rejecting party, or on its own initiative. *See Tranen v. Aziz,* 304 Md. 605, 612, 500 A.2d 636 (1985) ("The notice of rejection serves as the final step in the arbitration procedure by which the award may be held non-binding and the claim held open for judicial resolution."). In this case Curry notified the Director on February 22, 1991. Although the "award" was not entered until February 25, 1991, and the award was not formally served on Curry until March 1, 1991, the Director nevertheless knew that Curry intended to file an action to nullify the award. The fact that the notice was premature did not in any way frustrate the purpose of the notice.

■ An appeal from a final judgment must ordinarily be taken within thirty days after the entry of the judgment on the docket. *See* Rules 2–601(b), 8–202(a). *But see* Rule 8–602(d) (notice of appeal filed before entry of judgment on the docket, but after announcement of judgment, is effective). Similarly, a motion for J.N.O.V., or for new trial, or to alter or amend judgment must be filed within ten days after entry of the judgment on the docket (or, in the case of a motion for J.N.O.V. where no verdict was returned, within ten days after the discharge of the jury). *See* Rules 2–532(b), 2–533(a), 2–534, 2–601(b); *see also Atlantic Food & Beverage Sys., Inc. v. City of Annapolis,* 70 Md.App. 721, 724, 523 A.2d 648 (1987) (Rule 2–534 motion filed prior to entry of judgment on the docket is not permitted by law). Thus, ordinarily a party is charged with knowledge of the date of judgment, and, regardless of actual knowledge, must file the appropriate notice or motion within the prescribed time period.

Under CJ § 3–2A–06(a), however, the period during which the rejecting party may file a notice of rejection does not begin to run until that party is served with the award. This evidences the legislative intent that the rejecting party be given the full thirty day period during which to consider whether to seek judicial review. In the case *sub judice,* Curry was notified on February 21, 1991, albeit informally, that the panel entered judgment of no liability as to both Sharma and Hillcrest. A true injustice would result if the very provision that was enacted to give Curry a full thirty days to consider an appeal also precluded her from the benefit of judicial review because she prematurely filed the notice of rejection.

The facts of this case are unlike those in *Tranen, supra,* where the appellants failed to file a notice of rejection or a notice of action to nullify. In that case the appellants clearly bypassed the Director, thus warranting dismissal of the action. *See also Wimmer,* 75 Md.App. at 112, 540 A.2d 827 ("Undeniably, any attempt to by-pass the Director is noncompliance with the Act."). Our holding in *Marousek v. Sapra,* 87 Md.App. 205, 589 A.2d 529, *cert. denied,* 324 Md. 325, 597 A.2d 421 (1991), is also distinguishable. There the appellant failed to file a certificate of qualified expert within ninety days of the date of the filing of the claim. The panel chairman dismissed the action and the appellant filed a motion for reconsideration and to correct award pursuant to CJ § 3–2A–05(h). Before the panel chairman ruled on that motion, appellant gave notice of rejection of the award and filed an action to nullify, along with a complaint, in the circuit court. The circuit court dismissed appellant's complaint whereupon appellant noted an appeal to this Court. We held that "jurisdiction over the award remained with the [HCAO] despite appellant's action to nullify and despite her subsequent appeal to this Court." *Id.* at 214, 589 A.2d 529. Thus, the circuit court proceedings as well as the appeal to this Court were premature. We found "significant that review can occur only after the initial tribunal has completed its work. In other words, there can be no review until all of the actions required of the first tribunal have been taken." *Id.* at 214–15, 589 A.2d 529; *see also Ott,* 309 Md. at 647 n. 4, 526 A.2d 46 ("[T]he arbitration process

... must be completed before a cause of action arises in Maryland. ...").

In the case *sub judice*, however, the HCAO, with one relatively insignificant exception, had completed its required actions at the time Curry filed the notice of rejection. The panel had, as of February 15, 1991, made a determination of liability and assessed the costs. The Final Order was entered on the HCAO docket. The fact that the APD, which included the apportionment of costs, was not entered on the docket until three days after the notice of rejection was filed does not compel the conclusion that the initial tribunal did not complete its work.

Even in a judicial setting our holding *supra* would be the same. "[T]echnical irregularities will not be permitted to deprive a party of an opportunity to assert his or her legal rights when the other party has not been prejudiced." *Wimmer*, 75 Md.App. at 110, 540 A.2d 827 (*citing Mitcherling*, 61 Md.App. at 121, 484 A.2d 1060); *cf.* Rule 8–602(d) (notice of appeal filed before entry of judgment on the docket, but after announcement of judgment, is effective). The premature filing of the notice of rejection in this case did not result in prejudice to Hillcrest. Indeed, Hillcrest does "not claim that [it was] in any way prejudiced by [Curry's] action. Any error did not affect [Hillcrest's] substantial rights because [it was] not misled. [Hillcrest] could not have questioned [Curry's] rejection of the award or [her] intent to pursue a malpractice action against [Hillcrest]." *Wimmer*, 75 Md.App. at 112, 540 A.2d 827. We hold that, under the particular facts of this case, Curry complied substantially with CJ § 3–2A–06(a) and, thus, the circuit court had jurisdiction over the action to nullify the award.

## II

### The Lingan Doctrine

After the panel hearing, the Chairperson orally granted Hillcrest's motion to benefit from Sharma's defenses on the merits under the so-called *Lingan* doctrine. According to

Hillcrest, "[t]he common law has long recognized that whenever some of the defendants jointly and severally liable for a claim are in default and other defendants are not in default, then a successful defense of the answering defendants on a joint issue inures to the benefit of the defaulter." The Chairperson granted that motion, but the circuit court, upon Curry's motion to vacate the award as to Hillcrest, ruled that the *Lingan* doctrine

> applies only when the answering defense extinguishes the Plaintiff's/Claimant's entire right of action, such as a statute of limitations defense. In the instant case, regardless of [Sharma's] success on the merits, this Court finds nothing inconsistent or unfair about holding [Hillcrest] to suffer the penalty of a default judgment. Therefore, the Motion to Vacate ... filed by [Curry] is GRANTED AS TO [HILLCREST].

Hillcrest now argues that the circuit court erroneously granted the motion.

Hillcrest relies on the early case of *Lingan v. Henderson,* 1 Bland 236 (Md.Ch.Ct.1827), *rev'd without op. sub nom., Lingan v. English,* 1 Bland 283 (Md.1830), to support its contention that this doctrine is embedded in Maryland's common law. In light of our holding *infra,* it will not be necessary to consider the particularly interesting issue of the vitality and applicability of the *Lingan* doctrine. We do observe, however, that the *Lingan* doctrine's force is questionable in light of the narrow holding of the Court in its reversal of *Lingan, see McCormick v. Gibson,* 3 G. & J. 12, 18–20 (Md.1830); *Baltimore & Ohio R.R. v. Trimble,* 51 Md. 99, 110 (1879) ("*Lingan* ... was reversed by the Court of Appeals because the complainants were not entitled to relief upon the merits as disclosed by the proof."), and the explicit observation of the Court in *Simms v. Lloyd,* 58 Md. 477, 479–80 (1882), that

> in order to receive the benefit of the Statute of Limitations it must be specially pleaded; and the reliance of one defendant in his answer or plea upon the Statute will not enure to the benefit of another defendant who has not so relied[,

including] ... persons in default and against whom an interlocutory decree and a decree *pro confesso* had been passed, for want of appearance and answer.

*Cf. Brooks v. State,* 85 Md.App. 355, 364–65, 584 A.2d 82 (1991) ("Rule [2–323] makes clear that the plea of limitations is an affirmative defense which must be pleaded specially.... Failure specially to plead limitations within the time set forth in the Rule results in a waiver of the plea.").

## III

### *De Novo Review of Award by Default*

■ Curry filed a motion to enter default against Hillcrest in the circuit court, arguing that, because of Hillcrest's intentional failure to respond to the claim and the ensuing award by default, Hillcrest failed to arbitrate, and thus, did not satisfy a condition precedent to judicial review. The circuit court motions judge denied Curry's motion because Hillcrest was allowed to benefit from the defense of Sharma, the final outcome being an award in favor of both defendants, and "[u]ltimately [Hillcrest] was permitted to participate in the arbitration process and should not be precluded from defending [itself] in the de novo appeal to the Circuit Court." The trial judge elaborated further:

The problem is they did try to get back in at Health Claims. This isn't a situation where they just walked away. Okay, they did default, but then they tried to have the default vacated and had made efforts to litigate the merits of the Plaintiff's contention before Health Claims.

Under that posture, I'm inclined to say they did enough to allow them to press the issue de novo in the Circuit Court. If this were a situation where they simply had walked away and did nothing and now Mr. Cook gets the verdict he got on behalf of Dr. Sharma at Health Claims and now they jump in and say, hey, look, we're home free, so to speak, that would be a different situation, but I think it is important, at least on my decision here, on their right to fight in the Circuit Court that they did make efforts to get that default vacated.

Curry does not contest the circuit court's finding that Hillcrest did participate in the arbitration process despite its initial default; rather, Curry cites *Bailey v. Woel*, 302 Md. 38, 485 A.2d 265 (1984), and *Robinson v. Pleet*, 76 Md.App. 173, 544 A.2d 1, *cert. denied*, 313 Md. 689, 548 A.2d 128 (1988), and argues to this Court, as she did below, that Hillcrest was not entitled to contest liability in the *de novo* appeal, based upon its intentional default below. We disagree.

In *Bailey*, the appellants "declined" to put on any evidence before the HCAO panel, giving no reason for this decision. The panel, unable to determine the merits of the case, dismissed the claim. The appellants then filed an action to nullify the award in the circuit court, but the circuit court dismissed that action because the appellants had not complied with a condition precedent to bring suit in the circuit court. On appeal, the appellants argued " 'that the mere filing of the Health Claims Arbitration Claim Form constitutes compliance with the "condition precedent" to a jury trial. . . .' " 302 Md. at 41, 485 A.2d 265. The Court of Appeals disagreed.

This Court thoroughly examined the Act in *Attorney General v. Johnson, supra,* 282 Md. 274, 385 A.2d 57 [1978]. Our *Johnson* opinion made it clear that one of the goals of the General Assembly in establishing the arbitration procedure was to provide a means whereby court suits could be avoided as much as possible. The provision for arbitration was described as a requirement "that the litigants attempt to resolve their dispute by submitting it to an arbitral panel before presenting the controversy to a court for resolution."

. . . Clearly, then, the Court in *Johnson* interpreted the Act as requiring a thorough dispute resolution process in which a plaintiff would produce evidence to prove his case before the arbitration panel prior to filing suit in court.

Further support for requiring claimants to produce evidence before a medical malpractice arbitration panel is found in § 3–2A–05(d) of the Act, which provides that the "arbitration panel shall first determine the issue of liability with respect to a claim. . . ." Obviously, if the panel has *no* evidence from which to determine liability, as the plaintiffs

concede was the case here, the panel cannot perform its first duty.

*Id.* at 42–43, 485 A.2d 265 (citation omitted). The Court held that, "under the Maryland statute, a plaintiff who presents no evidence before a [HCAO] panel has not satisfied the condition precedent of submitting his claim to arbitration prior to instituting court action." *Id.* at 45, 485 A.2d 265.

Curry argues that the holding in *Bailey* should also obtain in this case. *Bailey,* however, is distinguishable. In that case the appellants, who were the claimants, presented no evidence from which the panel could make a determination of liability. In short, there was no hearing. In the instant case, there was a full evidentiary hearing. Although Hillcrest could not participate in the liability component of that hearing, it was entitled to present evidence regarding the issues of causation and damages in the damages component, if necessary. It was not necessary, however, because the Chairperson determined, rightly or wrongly, that, under *Lingan,* Sharma's successful defense on liability could inure to the benefit of Hillcrest. Thus, based on the evidence presented by both Curry and Sharma, the Chairperson was able to make a determination as to Hillcrest's liability. *See* CJ § 3–2A–05(a) ("[A]ll issues of law shall be referred by the Director to the panel chairman."); *McClurkin v. Maldonado,* 304 Md. 225, 235, 498 A.2d 626 (1985) (recognizing that, under CJ § 3–2A–05(a), the panel chairman may decide "any issue which a circuit judge would decide in a jury damage suit at any point from filing through final judgment"). Under the particular facts of this case, therefore, the purposes of the Act as enunciated in *Johnson* were satisfied, *i.e.,* there was a thorough dispute resolution process where the litigants attempted to resolve their dispute by submitting it to an arbitral panel.

Curry also argues that, under *Robinson,* the trial judge's reliance on the fact that Hillcrest did not intentionally "walk away" from the panel hearing is misplaced. In *Robinson,* the appellant/claimant failed to file a certificate of qualified expert within the requisite ninety day period following filing of the claim. One of the defendants filed a motion to dismiss, and

the panel dismissed the claim before the appellant was able to respond to the motion. The appellant then filed a belated opposition to the motion, and included with it the required certificate. The appellant also filed a motion for reconsideration. The Director entered an award in favor of the appellees, and then the appellant filed a complaint in circuit court, seeking to nullify and vacate the arbitration award. The circuit court granted the appellees' motion to dismiss the circuit court proceedings, and we affirmed. We held that failure to present the merits of the claim to the panel mandated dismissal of the circuit court action:

> The dismissal of appellant's claim for failure to comply with the Act similarly prevented appellant from satisfying the condition precedent necessary to file suit in court. A dismissal, whether it occurs because the claimant refused to present any evidence or because she failed to comply with the statutory procedure necessary to maintain her claim, prevented the arbitration panel from hearing the merits of the claim.... The claim asserted by appellant never proceeded to any dispute resolution process, and this failure was a result of appellant's own failure to comply with a clear directive of the Act.

*   *   *   *   *   *

Casting her argument in a different light, appellant seems to contend that because the proceedings conducted in the circuit court are "... a new, separate, and distinct proceeding ...," she must be allowed to proceed to trial on the merits, and that "she is punished by the circuit court solely for an unintentional failure at arbitration." Had the claim reached the merits before the arbitration panel and had there been an award based on the merits, then trial *de novo* would have been conducted in the circuit court ... if appropriate post-arbitration procedures were followed. Under the facts, herein, however, appellant clearly is not entitled to that same *de novo* proceeding. The fact that the requisite certificate is on file before the circuit court does

not resuscitate the claim that died in Health Claims Arbitration.

76 Md.App. at 177–78, 544 A.2d 1 (citation omitted). Unlike the claim in *Robinson*, the claim in the instant case did not die in Health Claims Arbitration. As discussed *supra*, after a full hearing, and, based on the evidence adduced, the panel made a determination of no liability with respect to Sharma, and the Chairperson made a determination of no liability with respect to Hillcrest. *Robinson*, therefore, is inapposite.

Although we conclude that, under the particular facts of this case, Curry was not entitled to an order of default as against Hillcrest at the circuit court level, we want to make perfectly clear that the Act's condition precedent to judicial review—a thorough dispute resolution process wherein the litigants attempt to resolve their dispute by submitting it to an arbitral panel before presenting the controversy to a court for resolution—is not "one-sided" as Hillcrest suggests. We are not here deciding that when a defendant defaults at the Health Claims Arbitration level, and that default prevents the panel from making an award based on the facts and the law, the defendant is not entitled to a trial *de novo* in the circuit court, because the issue of liability "died" at the Health Claims Arbitration level. Rather, we limit our holding to the specific facts of this case where the default did not result in a determination of liability based solely on the party's failure to plead.

**JUDGMENT AFFIRMED; COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**