JAMES McCORMICK, JR. *vs.* FAYETTE GIBSON, *et al.*
*Dec.* 1830.

The bar, arising from the act of limitations, relied upon in the answer of one co-defendant to a bill in Chancery, brought by a creditor against devisees, to recover his claim out of the real estate of a deceased debtor, upon the ground that the personal estate had been exhausted in the payment of debts, will not enure to the benefit of the other co-defendants, and authorise the Chancellor to dismiss the bill.

Upon a bill of this description, where the devisees have received distinct parcels of property, the interests of the defendants are several and distinct. The claim against each being in proportion to the amount devised to him.

APPEAL from Chancery.

This was a bill filed in the Court of Chancery on the 19th June, 1824, against the heirs, devisees and administrator, and purchasers from the heirs and devisees of *Jacob Gibson,* deceased, (the appellees,) by *James McCormick, Jr.* (the appellant.) The object of the bill was to enforce the payment of a promissory note of *Jacob Gibson,* dated the 18th October, 1817, payable five months after date, for $2500, which had regularly come to the hands of the complainant by endorsement. The bill alleged the personal estate of the maker of the note to have been exhausted in the payment of debts; that this note had not been paid; that a large real estate of the deceased was in the possession of the defendants by his devise, and by purchase from his devisees, and prayed for a sale of the real estate, payment of the note, and for general relief. *Jacob Gibson* died on the 10th of January, 1818. Several of the defendants answered the bill, others, non-residents, were proceeded against by publication, &c. Among the answers was the following of *James Tilton,* who had intermarried with one of the devisees of the deceased.

"The separate answer of *James Tilton* to the bill of complainant aforesaid:

"This defendant, now, &c. says that he has no particular knowledge of the note alleged to have been executed by the said *Gibson,* to *Samuel Hughes,* or of the endorsements thereon; but if the same was executed and endorsed as alleged, he is advised that the debt was due more than three years before the filing of the aforesaid bill, and he pleads the act for the limitation of actions, in bar to the relief which is sought by the bill of complaint, and prays to have the benefit of the same at the final hearing. This defendant admits the death of the said *Jacob Gibson,* and that he made a will, as stated in the complainant's bill, and admits the will as filed. The defendant, however, does not admit that the personal estate has been exhausted in a due course of administration; on the contrary, he de-

nies that such is the fact, and he is advised that the heirs and devisees are not to be included or affected by any proceedings which may have been had at law against the executor of the said *Jacob Gibson,* and prays to be dismissed, &c. "

None of the other answers relied upon the act of limitations. The execution of the note was proved, and the complainant had obtained judgment against the administrator. The final account of the administrator with the Orphans Court, showed the personal estate to have been exhausted, and did not show that the debt claimed here, had been paid. Several of the answers admitted the complainant's demand had not been paid.

On the 22d January, 1828, upon final hearing, BLAND, Chancellor, passed the following decree.

" This bill was filed on the 19th January, 1824, by *James McCormick, Jr.* to have the real estate of the late *John Gibson* sold, to satisfy a debt due to him, on the ground that *Gibson's* personal estate had been exhausted. The claim of the plaintiff is founded upon a promissory note, bearing date on the 18th October, 1817, given by the late *Jacob Gibson* to *Samuel Hughes,* payable five months after, and of which, by several endorsements, the plaintiff has become the holder.

In opposition to this claim, one of the defendants, *James Tilton,* in his answer, insists and relies upon the act of limitations as a bar, and it is quite clear, that this objection, when made by any one of the defendants, is as effectual as if it had been made by them all. There is nothing in the proof to take the case out of the act, and it has been established by the Court of Appeals, that a judgment against an executor, as such as that which has been obtained by this plaintiff against the executor of *Gibson,* cannot deprive the heirs of a deceased debtor of the right to take advantage of the act of limitation, as a bar." He therefore dismissed the bill with costs.

From this decree the complainant appealed to this court.

The cause was argued before BUCHANAN, Ch. J., MAR-TIN, and DORSEY, J.

*Taney*, (Attorney General,) and *Scott*, for the appellant, contended,

That the statute of limitations offered no defence to the claim of the complainant. Because, 1. The claim demanded was not due at the death of *Jacob Gibson*. 2. Not being due at the death of *Gibson*, and his personal estate having been exhausted in the payment of debts, there is no foundation for the plea of limitations. 3. *Jacob Gibson*, by his will, charged his estate with the payment of his debts, and made a devise of the remainder of his estate after the payment of his debts. 4. That *James Tilton* being a non-resident defendant, and absent, could not avail himself of the plea of limitations. 5. That *Tilton* not appearing and answering the bill before the time limited for his answering it, in the order of publication awarded against him as an absent defendant, could not plead limitations. 6. That admitting the plea of limitations, the complainant was entitled to a decree against the other defendants, and particularly against those defendants who did not deny the claim, but consented to a decree ; and against those, who not answering, a decree *pro confesso* had been obtained. They cited 1 *Harr. and Johns.* 743. 2 *Ib.* 48. 4 *Ib.* 126. 2 *Harr. and Gill*, 323.

If a will directs debts to be paid, the statute of limitations cannot be pleaded. 8 *Com. Dig. (new ed.)* 719. *Blackway vs. Stafford*, 1 *Dick.* 48. *Harr. Dig.* 348. 1 *Sch. and Lef.* 413, 428, 431. 2 *Sch. and Lef.* 630. 1 *Ball and Beatt.* 119. 3 *Bac. Abri.* 460, 461. 10 *Johns. Rep.* 529, 538, 547.

In this case the interest of the defendants being several, the plea of one, if good as to him, cannot enure to the benefit of the others. These parties were not made defendants because they had a joint interest, but because, by the rules of Chancery, they must be brought before the court, having an interest, though a separate one.

No counsel appeared for the appellees.

The opinion of the Court was delivered by DORSEY, J.

The only question which we are called on to consider is, was the complainant rightfully turned out of the Court of Chancery, on the ground that the plea of limitations by *James Tilton,* one of the defendants, is as effectual a bar to any relief "as if it had been made by them all." To sustain this broad and general principle, thus assumed by the Chancellor, as the basis of his decree, but two cases have been cited; viz. *Clason vs. Morris,* 10 *John.* 524, and *Lingan vs. English,* decided by this court at June term, 1830. Before this tribunal, *Clason vs. Morris,* (as far as the present question is concerned,) if an authority at all, can only be regarded as one of the lightest character. It was decided in the Court of Errors of *New York,* but partially composed of lawyers, by ten senators concurring in opinion with one judge of the Supreme Court, and five senators dissenting from that opinion ; among the dissentient judges, we find (Chancellor, then Chief Justice,) *Kent, Thompson* and *Van Ness,* and with them senator *Platt,* subsequently a distinguished member of that court. When we contemplate the overwhelming preponderance in the number of judges of the Supreme Court, and perhaps of the legal talents of the Court of Errors, which dissented from the principle asserted in *Clason vs. Morris,* ought it not rather to be regarded as a case denying, than establishing the doctrine contended for. Justice *Spencer,* whose views were adopted by a majority of the senators, admits that he had met with no cases in equity to sustain his position; and he rests it wholly upon an unwarrantable analogy, between proceedings at law and in equity. "For, (says he) it is a well settled principle of law, that in actions upon contract, the plea of one defendant enures to the benefit of all, for the contract being entire, the plaintiff must succeed upon it against all or none : and therefore, if the plaintiff fails at the trial upon the plea of one defendant, he can-

not have judgment against those who let judgment go by default." But does such rigid formality exist in Courts of Chancery, or is it at all consistent with the principles and practice by which those tribunals are regulated? Must the complainants succeed against all or none? Every day's experience gives the negative to these inquiries. A decree may give joint relief to both complainants, or separate and distinct relief to each. As to one, the bill may be dismissed; whilst full relief is granted to the other. The same principle applies to defendants. Joint relief may be granted against both; a separate and distinct relief against each. The bill may be dismissed as against one defendant, and full relief obtained against the other. At law the same redress is given, the same judgment is entered against all. But this is the offspring of mere legal technicality, and bears no application to proceedings in a Court of Chancery; which disregarding matters of form, modifies its remedies to every variety of circumstances, and reaching the substance of the case, gives relief according to the several equities of the respective parties.

If by analogy to the course of proceeding at common law, we are to adopt the doctrine, that a bar sustained by one defendant, operates to prevent a recovery against the rest, justice surely demands that the analogy should be carried out; and that in equity as at law, an acknowledgment by one defendant should restore the remedy against all. In that event, the answer of *Fayette Gibson* in this case, would entitle the complainant to a decree against *Tilton*, as well as the other parties defendants. If in the case in *New York*, where the defence went to the whole merits of the claim, it was a matter for discordant opinions amongst eminent jurists; is there room for a doubt on the subject before us, when the defence relied on is a mere statutory bar, intended only for the protection of those who seek shelter under its wings. Upon what grounds was the plea of limitations created a bar? Upon the presumption that the party had paid and lost, or was unable to pro-

duce the evidence of his payment. *Jacob Gibson* died in less than three months after the execution of the note on which the complainant's claim is founded: and that note is made payable five months after its date. *Tilton's* plea then cannot rest on the presumption that the whole note was paid by the testator, because he died before it became due; nor on the presumption that it was paid by *Tilton*, because he was under no legal obligation to do so. All that he could have been required to pay, and therefore can be presumed to have paid, was that proportion of the debt which the value of the real estate given to his wife, bore to the value of the whole real estate devised. This is the greatest latitude that could be given to the operation of this plea of limitations. But it cannot be available even to that extent. He has pleaded for himself only; against his wife a decree *pro confesso* has been suffered to pass; so that nothing is saved by the plea but his life estate; the reversionary interest of the wife remaining liable to the claim of the complainant. Regarding the plea in this limited and almost immaterial aspect, can it be received as a bar to all redress against any of the defendants; some of whom have in answering, admitted every material allegation in the bill, and consented to a decree, giving the relief which has been prayed for? The interests of the defendants here are several and distinct, and not joint; the claim against each being in proportion to the amount devised to him. There is no joint contract to be enforced; no unity of interest in the property to be affected. If such a general rule of equity, as that stated by the Chancellor does exist, (which we cannot admit,) it should not be applied to a case like the present.

The decree under consideration can derive no support from the case of *Lingan, et al. vs. English, et ux.* decided by this court at June term, 1830. The question here agitated was not presented by the facts in that cause. The complainants filed their bill, stating that *James M. Lingan*,

their father, conveyed by deed to *John Henderson,* a parcel of land ; that *Henderson* executed and delivered a paper to *Lingan,* by which he acknowledged to have received of *Lingan,* "a deed for 420 acres of land lying in *Montgomery* county, which is to be accounted for by him ; that the complainants were advised that said paper was an acknowledgment that no money was paid for said land; and that it was an engagement to pay the purchase, if there was in truth any sale to *Henderson;* or if not, to reconvey said land to him, *Lingan.*" That *John Henderson* had since died intestate, leaving three of the defendants his heirs at law, and *Lydia,* (who had since intermarried with *David English,*) his widow, who administered on his estate, and "possessed herself of the personal assets of the estate sufficient to pay all just debts against it." The bill then prayed, "that by a decree of this honorable court, the administratrix of said *Henderson* may be compelled to pay the amount of the purchase money for the land aforesaid; or if the sale should not be admitted or proved, that the heirs of the said *Henderson* may be compelled to reconvey to such of your complainants as are entitled thereto, the said land," and for general relief. *English* and wife filed their answer, neither denying nor admitting assets. The bill was taken *pro confesso* as to the other defendants, except *Richard,* who pleaded the act of the General Assembly, entitled "an act for limitation of certain actions for avoiding suits at law." Upon these proceedings and the proof taken in support of them, the Chancellor decreed a sale of the land for the payment of the purchase money. The bill presented no case warranting relief, but by a decree for the reconveyance of the land by the heirs of *Henderson;* or payment of the purchase money by the administratrix. To neither of which remedies did the complainants shew themselves entitled upon the proof. The Court of Appeals therefore, could not have done otherwise than as they did, reverse the decree and dismiss the bill. It

was not necessary to inquire into the applicability of the plea of limitations to the case presented by the bill, or into its effect and operation as pleaded.

DECREE REVERSED.