412

653 A.2d 934

Lydia CURRY

v.

**HILLCREST CLINIC, INC.**

**No. 52, Sept. Term, 1994.**

Court of Appeals of Maryland.

Feb. 10, 1995.

414

John Amato, IV (John T. Enoch; Goodman, Meagher & Enoch, all on brief), Baltimore, MD, for petitioner.

R. Wayne Pierce (Niles, Barton & Wilmer, all on brief), Baltimore, MD, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RODOWSKY, Judge.

Before us are cross-petitions in an action initiated under the Health Care Malpractice Claims Act (the Act), Maryland Code (1974, 1989 Repl.Vol., 1994 Cum.Supp.), §§ 3–2A–01 through 3–2A–09 of the Courts and Judicial Proceedings Article (CJ). The principal issue presented by the claimant's petition concerns default procedures in arbitration when malpractice claims are asserted against multiple defendants. We shall hold that, where a common basis of liability had been alleged against two defendants, one of whom failed to answer, a finding in favor of the non-defaulting defendant that the common basis of liability is not proven inures to the benefit of the defaulting defendant. On the health care provider's petition the principal issue concerns possible prematurity in the filing of the claimant's notice of rejection of an adverse award. We shall hold that the claimant's notice was effective.

The claimant is Lydia T. Curry (Curry). The defaulting health care provider is Hillcrest Clinic, Inc. (Hillcrest). The co-defendant health care provider who timely answered is Dr. Sheo P. Sharma (Sharma). We distill from Curry's arbitration complaint that Hillcrest operated an abortion clinic in the Baltimore Metropolitan area where Sharma directed and con-

trolled the staff. In March 1988 Curry, then approximately seventeen weeks pregnant, presented at the clinic for the purpose of obtaining an abortion. In the course of an attempted abortion Sharma allegedly perforated Curry's uterus and colon. The abortion was successfully completed the next day at Johns Hopkins Hospital where the physicians "repaired the uterine defect, fashioned a Hartman's Pouch, and completed a rectosigmoid colostomy."

Curry filed a complaint with the Health Claims Arbitration Office (HCAO) against Sharma and Hillcrest. Each count of her complaint alleged that "[t]he clinic is liable under the doctrine of *respondeat superior* for the actions of Dr. Sharma." Sharma was served, appeared, and answered.[1] Hillcrest was served on March 5, 1990, but it did not answer.

██ Section 3–2A–02(d) of the Act provides that "[e]xcept as otherwise provided, the Maryland Rules of Procedure shall apply to all practice and procedure issues arising under this subtitle." The procedure upon default for failure to answer the complaint is not prescribed in the Act or in the rules adopted by the HCAO Director under CJ § 3–2A–03(b)(3). Consequently, Maryland Rule 2–613 governs such defaults. That rule provides for an order of default, notice of the entry of the order of default, a motion to vacate the order of default, entry of judgment, and "finality" of the default judgment.[2]

---

1. Sharma's answer is not in the record extract. One may fairly infer, however, that Sharma denied liability on the merits.

2. Maryland Rule 2–613, "Default Judgment," reads in full as follows:

"(a) **Order of Default.**—If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall enter an order of default. The request shall state the last known address of the defendant.

(b) **Notice.**—Promptly upon entry of an order of default, the clerk shall issue a notice informing the defendant that the order of default has been entered and that the defendant may move to vacate the order within 30 days after its entry. The notice shall be mailed to the defendant at the address stated in the request and to the defendant's attorney of record, if any. The court may provide for additional notice to the defendant.

Following Hillcrest's failure to answer, the next step in the procedural overview of this action was the entry by HCAO, at Curry's request, of an order of default. HCAO sent notice of the order of default to Hillcrest, which Hillcrest received, but Hillcrest filed no motion to vacate the order of default. Curry then prepared, and the HCAO Director signed, a paper writing titled "Order Entering Award by Default." This document "ORDERED that an award of default is entered in favor of [Curry against Hillcrest] in an amount to be determined by the [arbitration] panel on the issue of [Curry's] damages."

More than two weeks after the "award by default" Hillcrest moved to "set aside entry of default judgment." The motion was denied by the chairwoman of the panel. Hillcrest's motion did not contend that Sharma's answer operated as a denial of liability for Hillcrest as well.

The contention that Hillcrest benefited from Sharma's defenses was first raised in a motion *in limine* filed with the arbitration panel three days before the hearing on the merits. The panel deferred ruling on the motion *in limine* until the

----

(c) **Motion by Defendant.**—The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

(d) **Disposition of Motion.**—If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order.

(e) **Entry of Judgment.**—If a motion was not filed under section (c) of this Rule or was filed and denied, the court, upon request, may enter a judgment by default that includes a determination as to liability and all relief sought, if it is satisfied (1) that it has jurisdiction to enter the judgment and (2) that the notice required by section (b) of this Rule was mailed. If, in order to enable the court to enter judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings, or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury.

(f) **Finality.**—A default judgment entered in compliance with this Rule is not subject to the revisory power under Rule 2–535(a) except as to the relief granted."

conclusion of the hearing. Hillcrest was permitted to participate in the hearing only with respect to possible damages. At the end of the arbitration the panel decided that Sharma was not negligent as to certain alleged conduct and that, although he was "negligent in failing to carefully and fully inform the subsequent treating physicians," that "negligence was not the proximate cause of Ms. Curry's injuries." Under the panel's findings, there was no liability on Sharma's part.

With respect to Hillcrest, the panel further concluded as follows:

> "Given that Defendant Hillcrest's <u>Motion in Limine to Benefit from Sharma's Defenses and to Limit Damages</u> were orally granted at the hearing and that the panel found that Ms. Curry's injuries were not the proximate [result] of negligence caused by Defendants, <u>FINAL JUDGMENT OF NO LIABILITY IS ENTERED FOR DEFENDANT HILLCREST.</u>"

Curry filed with HCAO a notice of rejection of the award, and she brought an action to nullify the award in the Circuit Court for Baltimore County. Her complaint in court consisted of three counts. Count I, claiming against both Hillcrest and Sharma, repeated the allegations contained in Curry's health claims arbitration complaint. Indeed, Curry alleged that she was entitled to a default judgment against Hillcrest in the circuit court on Count I because those allegations were verbatim the allegations of the arbitration claim. Count II of the circuit court complaint claimed only against Sharma. Count III made allegations against Hillcrest, in addition to those set forth in Count I, for the purpose of asserting a negligence claim against Hillcrest that would be independent of, and distinct from, any negligence of Sharma.

In the circuit court Curry preliminarily petitioned to vacate the panel's award in favor of Hillcrest on the ground that the panel had exceeded its authority. See CJ §§ 3–2A–06(c) and 3–224(b)(3). Curry contended that Sharma's having prevailed on the merits in arbitration did not relieve Hillcrest of its

default. Curry also moved for a default judgment based on Hillcrest's default in arbitration.

The circuit court vacated the award, stating that the defense established by a non-defaulting defendant inures to the benefit of a defendant in default "only when the answering defense extinguishes the Plaintiff's/Claimant's entire right of action, such as a statute of limitations defense." The circuit court would not rule, however, that Hillcrest was precluded from defending the malpractice action in the circuit court. That court also rejected the defendants' motion to dismiss Curry's "appeal" from health claims arbitration.

At trial on the merits before a jury in the circuit court the verdict was in favor of both Sharma and Hillcrest on all counts. Judgment was entered accordingly.

Curry appealed to the Court of Special Appeals, and Hillcrest cross-appealed from the vacating of its award. Hillcrest also sought to dismiss Curry's appeal. *Curry v. Hillcrest Clinic, Inc.*, 99 Md.App. 477, 638 A.2d 115 (1994). That court held that Curry's "appeal" to the circuit court was not to be dismissed as premature because Curry had substantially complied with the Act's provisions for proceedings in a circuit court following an adverse award in health claims arbitration. *Id.* at 488–95, 638 A.2d at 120–24. The intermediate appellate court, although finding it unnecessary to decide whether Sharma's defense inured to the benefit of Hillcrest, additionally stated that the force of that doctrine, relied upon by the panel's chairwoman, was "questionable" in this State. *Id.* at 496, 638 A.2d at 124. The Court of Special Appeals, by distinguishing *Bailey v. Woel,* 302 Md. 38, 485 A.2d 265 (1984), rejected Curry's contention that she was entitled to a default judgment against Hillcrest in the circuit court. *Bailey* held that a claimant who put on no case in arbitration, based on a tactical decision, had failed to comply with the Act's condition precedent for instituting a medical malpractice action in the circuit court. The Court of Special Appeals noted that in Curry's matter there had been a "full hearing, and, based on the evidence adduced, the panel made a determination of no

liability with respect to Sharma, and the Chairperson made a determination of no liability with respect to Hillcrest." 99 Md.App. at 501, 638 A.2d at 126.

Thereafter this Court granted cross-petitions for certiorari that raise basically the same issues presented to the Court of Special Appeals. Because that court in a reported opinion had cast doubt on the viability in this State of the common law doctrine under which certain defenses by a non-defaulting defendant can inure to the benefit of a defaulting defendant, we considered the status of the doctrine to be a matter of public importance.

In Part I, *infra*, of this opinion we shall address two issues that logically precede analysis of the default issues, which we address in Part II. Additional facts will be stated hereinafter, as required for an understanding of the particular arguments.

I

A

Hillcrest contends that the circuit court erred in denying the defendants' motion to dismiss Curry's circuit court complaint. The argument rests on CJ § 3–2A–06(a), the relevant portion of which reads:

> "A notice of rejection must be filed with the Director and the arbitration panel and served on the other parties or their counsel within 30 days after the award is served upon the rejecting party...."

Hillcrest contends that Curry filed its notice of rejection with the Director before Curry had been served officially with the award, and that the sanction for this deviation from the ordained procedure is dismissal.

What transpired in the matter at hand is not entirely clear from the record, and it is the subject of some dispute between the parties. The facts most favorable to Hillcrest's preliminary contention are these. The panel chairwoman signed two documents on February 15, 1991. One is entitled "Final Opinion and Order." It states that "judgement[s] of no liabili-

ty" are respectively entered for Sharma and Hillcrest. That document makes no assessment or apportionment of costs. The second document is a preprinted form of HCAO entitled "Arbitration Panel Determination" (APD). The APD contains a section headed "COSTS," in which the chairwoman inserted, "split evenly between the parties (3)." Both documents were among the enclosures to a letter dated February 18, 1991 from the chairwoman to HCAO. The "Docket Management Docket Cover" of HCAO records the filing of the opinion and order on February 21, 1991, the filing of Curry's notice of rejection of award and the filing of a copy of her action to nullify on February 22, 1991, and the filing of the APD on February 25, 1991.[3]

Hillcrest contends that there can be no award without assessing arbitration costs and making any apportionment of them. Hillcrest relies on CJ § 3–2A–05(f)(1) which states that "[t]he award shall include an assessment of costs, including the arbitrators' fees." Hillcrest also relies on a regulation of the HCAO Director promulgated as Maryland Regs.Code (COMAR), tit. 1, § 03.01.12.E which reads in relevant part as follows:

"Form of Award.

"(1) Within 5 days after the close of the hearing, the arbitration panel shall submit to the Director a written award that concisely states the following information:

(a) [Relating to liability];

(b) [Relating to damages, if applicable];

(c) The arbitration costs and any apportionment made under § D above...."

We shall assume, *arguendo*, that a document is not "the award" under CJ § 3–2A–06(a) until costs have been assessed

---

**3.** The record extract contains copies of the opinion and order bearing a "received" stamp of HCAO dated February 25, 1991. Even if the notice of rejection of award were filed in advance of the opinion and order, as well as of the APD, that fact would not alter our analysis.

and any apportionment thereof made.[4]

 Absent an effective notice of rejection and action to nullify, the award in a health claims arbitration may be filed with an appropriate circuit court and confirmed by that court, in which event the award constitutes a final judgment of that court. *See* CJ § 3–2A–05(i). On the other hand, an effective notice of rejection and filing of an action to nullify can result in a trial of the malpractice action in a circuit court. In this respect filing a notice of rejection and an action to nullify in compliance with § 3–2A–06(a) and (b) is somewhat analogous to noting an appeal where the appeal is a de novo trial.

 Against the foregoing background, we agree with the analysis by the Court of Special Appeals that Curry substantially complied with the requirements of the Act for instituting an action to nullify in the circuit court. Further, Hillcrest's position rests on a very restrictive reading of "within 30 days after the award is served" in § 3–2A–06(a). The argument necessarily assumes that a notice of rejection filed before the commencement of the thirty day period is void so that, although it remains noted on the docket of HCAO, it has no efficacy that continues forward in time into the thirty day period. That was the result obtained under former Md.Rule 1012.a dealing with appeals to the Court of Special Appeals. *See Eastgate Assocs. v. Apper,* 276 Md. 698, 350 A.2d 661

---

4. In *State of Maryland Cent. Collection Unit v. Gettes,* 321 Md. 671, 584 A.2d 689 (1991), we held that, where half of the costs had been apportioned against the prevailing health care provider, the aggrieved claimant's timely notice of rejection and action to nullify had not brought before the circuit court the costs apportioned against the health care provider who again obtained a favorable judgment on liability in the circuit court. Thereafter, the General Assembly by Chapter 25 of the Acts of 1991, effective April 9, 1991, amended subsection (a) of CJ § 3–2A–06 by adding the language appearing in italics: "A party may reject an award *or the assessments of costs under an award* for any reason." 1991 Md.Laws at 1195. Subsection (b) was also amended by Chapter 25 to read: "The party rejecting the award shall file an action in court to nullify the award *or the assessment of costs under the award* and shall file a copy of the action with the Director." *Id.*

 The 1991 amendment does not apply to the instant matter, and we intimate no opinion on the amendment's effect.

(1976); *Sapero & Sapero v. Bell Air Plumbing & Heating Contractors, Inc.*, 41 Md.App. 251, 396 A.2d 317 (1979).

■ A change in that former result was effected under Title 8 of the Maryland Rules, "Appellate Review in the Court of Appeals and Court of Special Appeals," adopted effective July 1, 1988. Now, under certain circumstances, a prematurely noted appeal to the Court of Special Appeals is not to be dismissed. Rule 8–602(d) provides:

> "A notice of appeal from a ruling, decision, or order that would be appealable upon its entry on the docket, filed after the announcement of the ruling, decision, or order by the trial court but before entry of the ruling, decision, or order on the docket, shall be treated as filed on the same day as, but after, the entry on the docket."

■ We have previously noted the legislative directive in § 3–2A–02(d) under which "the Maryland Rules of Procedure shall apply to all practice and procedure issues arising under" the Act, except as otherwise provided. It is consistent with that legislative directive to interpret filing "within 30 days after the award is served" in § 3–2A–06(a) to include a notice of rejection filed before service of the award on the rejecting party, if the notice of rejection is filed, as here, after the decision has been announced and if that notice of rejection remains uncountermanded on the docket at the time the award is formally served.

For these reasons the circuit court correctly denied Hill-crest's motion to dismiss Curry's action to nullify.

## B

Curry suggests that the complaint on which the arbitration was tried alleged negligence by Hillcrest employees that was separate from that of Sharma so that the panel chairwoman exceeded her powers when she ruled that Sharma's defense inured to the benefit of Hillcrest. We disagree.

First, it is doubtful that this issue has been preserved. Curry's motion for a default judgment in the circuit court

rested exclusively on classifying Hillcrest's default as a deliberate one which fell within the rule of *Bailey v. Woel,* 302 Md. 38, 485 A.2d 265.

■ Further, whether Hillcrest by its default admitted actionable negligence on the part of employees other than Sharma is a matter of interpretation of the arbitration complaint. We have seen that Curry specifically expanded her allegations in circuit court beyond those pleaded in arbitration in an effort to assert as the basis for Hillcrest's liability negligence that was independent of Sharma. The negligent acts or omissions alleged in the arbitration complaint were attributed to Sharma alone or to "the defendants," with two exceptions. One of the latter allegations is that "Sharma and the staff" were aware that the attempted abortion had resulted in serious bodily harm to Curry who was not told of the nature and extent of that harm. The other allegation is that "Sharma and the [s]taff" were charged with follow up care. The panel chairwoman had heard Sharma's evidence when Hillcrest's motion *in limine* was granted. She ruled, in effect, that Hillcrest's admissions, by its default, of the arbitration allegations had been negated by the actual proof.

Inasmuch as the record of the arbitration is not before us, there is no way in which we can review whether Curry's proof established negligence on the part of Hillcrest employees that was independent of Sharma. The allegations, however, attribute to the staff the same conduct that is attributed to Sharma, and the entire panel, although finding negligence by Sharma in follow up care, nevertheless held that Sharma's negligence was not a proximate cause of Curry's injuries. Accordingly, the identical conduct attributed to Hillcrest's staff was also either non-negligent or not a proximate cause of Curry's injuries, insofar as the panel was concerned.

From the fact that the entire panel decided that there was no liability on Sharma's part it also follows that the chairwoman did not usurp the panel's function in applying to Hillcrest the legal conclusion that flows from the panel's finding. We discuss that governing legal doctrine in Part II.

## II

Curry's argument that she should have been permitted to proceed to a damage inquisition against Hillcrest in the circuit court has two steps. The first step requires error by the panel chairwoman in relieving Hillcrest of its default in arbitration. The second step requires characterizing that default as a failure to satisfy the Act's condition of arbitrating, precedent to bringing a circuit court malpractice action. In the latter connection Curry submits that a health care provider who deliberately fails to arbitrate should be precluded from presenting a defense for the first time in the circuit court malpractice action, just as the injured plaintiff in *Bailey v. Woel, supra,* was precluded from presenting for the first time in circuit court a case of liability against a health care provider. Because Curry's argument fails at its first step, we need not address the second step.

### A

Underlying the first step of Curry's argument is the mistaken notion that the order of default in arbitration was a judgment of liability that could not be disturbed. Curry asserts that "[g]oing into the [arbitration] hearing, Curry had an <u>award</u> by default against Hillcrest, not just an order of default." Brief for the Petitioner at 43. Curry further submits that "[a]n award, or judgment by default is a final determination as to liability. *Himes v. Day,* 254 Md. 197, 254 A.2d 181 (1969)." Brief for Petitioner at 43. Under Md.Rule 2–613, however, dealing with defaults by a defendant's failure to plead, there is no judgment until damages have been assessed. *See* Rule 2–613(e). Consequently, Curry's "award of default" had no legal effect beyond reiterating that an order of default had been entered and that a motion to vacate the order of default had been denied. Moreover, *Himes v. Day* on which Curry relies was decided under the procedure in effect prior to the 1984 revision of Title 2 of the Maryland Rules.

*Banegura v. Taylor,* 312 Md. 609, 541 A.2d 969 (1988), is dispositive. The defendant in that case had been served with a civil complaint alleging rape of the plaintiff. An order of default was entered in November 1984, and the notice of default sent by the clerk, but there was no response by the defendant. On January 4, 1985, at the request of the plaintiff, the court entered a "judgment" of default. Thereafter on February 4, 1985 the defendant moved to strike the default "judgment," but the motion was denied. A judgment for substantial damages was entered against the defendant, who appealed to the Court of Special Appeals. In an unreported opinion that court "dismissed the appeal as to the judgment by default, finding it untimely, and affirmed the judgment as to damages." *Id.* at 614–15, 541 A.2d at 972. This Court granted certiorari. Before us, the plaintiff argued "that the order of January 4, 1985, was a final judgment on the issue of liability, and that the time for appeal expired thirty days after its entry." *Id.* at 618, 541 A.2d at 973.

Judge McAuliffe, writing for the Court, could not have made the correct procedure more plain.

"If [plaintiff] were correct concerning the nature of the January 4 order, her analysis of the effect of the later motion to strike would be sound. *Unnamed Atty. v. Attorney Griev. Comm'n,* 303 Md. 473, 486, 494 A.2d 940 (1985). She is wrong, however, in treating the order of January 4 as a judgment. It was not a judgment—indeed it served no function at all and must be considered a nullity. [Plaintiff] in seeking that order, and the court in granting it, were adhering to a default procedure that existed under former Maryland Rule 310, but which was changed by the adoption of Rule 2–613, effective July 1, 1984. Under the former procedure, a default judgment could be entered for failure of a defendant to plead, and when entered, became a final and appealable judgment as to liability. *Himes v. Day,* 254 Md. 197, 254 A.2d 181 (1969).

"Under the current procedure, which was in effect when [defendant] defaulted, the *order* of default was correctly entered, but a *judgment* should not have been entered until

there had been satisfactory proof of damages. Rule 2–613(e). The amendment to the rule was specifically designed to avoid piecemeal appeals, and no appeal may be taken from the entry of an order of default. *Adams v. Mallory*, 308 Md. 453, 459–60, 520 A.2d 371 (1987); *O'Connor v. Moten*, 307 Md. 644, 647 n. 2, 516 A.2d 593 (1986). Likewise, an immediate appeal could not have been taken from the denial of [defendant's] motion to strike the default order. That order was interlocutory, because it did not dispose of the entire claim. Rule 2–602. As an interlocutory order, it was subject to revision within the general discretion of the trial court until a final judgment was entered on the claim. *Henley v. Prince George's County*, 305 Md. 320, 328, 503 A.2d 1333 (1986).

"[Defendant's] motion to strike, filed more than thirty days after the entry of the order of default, must be viewed as a request that the trial court invoke its authority to revise an order intended to be final in nature, but which was, in fact, interlocutory. A trial judge possesses very broad discretion to modify an interlocutory order where that action is in the interest of justice."

312 Md. at 618–19, 541 A.2d at 973–74. *See also Carter v. Harris*, 312 Md. 371, 374 n. 2, 539 A.2d 1127, 1128 n. 2 (1988); P. Niemeyer & L. Schuett, *Maryland Rules Commentary* 472–73 (2d ed. 1992).

Curry also bases an argument on Rule 2–613(f) that is relevant to the foregoing analysis. She submits that "[o]nce judgment was granted to Sharma, [the chairwoman's] revisory power as to the award against Hillcrest applied only to the amount of damages entered." Brief for the Petitioner at 22. Rule 2–613(f) provides that "[a] default judgment entered in compliance with this Rule is not subject to the revisory power under Rule 2–535(a) except as to the relief granted."

Curry correctly recognizes that the reason for the limitation on revisory power in subsection (f) "is to avoid giving the defendant in default two opportunities to set it aside." *Niemeyer & Schuett, supra*, at 473. Curry's submission is that

when, in this multiple defendants arbitration, judgment was entered in favor of Sharma, the "judgment" as to liability on the part of Hillcrest became final and not subject to revision per subsection (f) of Rule 2-613.

This submission by Curry rests on the same defect exposed by *Banegura v. Taylor.* Subsection (f) does not operate unless and until "[a] default judgment [has been] entered in compliance with" Rule 2-613. "Rule 2-613(f), which creates a limited exception to Rule 2-535, is also applicable only to final judgments." *Quartertime Video & Vending Corp. v. Hanna,* 321 Md. 59, 65, 580 A.2d 1073, 1076 (1990). No judgment was ever entered against Hillcrest because damages were never assessed against Hillcrest. The only award, or judgment, entered on the claim against Hillcrest was in favor of Hillcrest.[5]

Thus, the issue before us reduces to whether the panel chairwoman acted correctly in striking the interlocutory order of default as to Hillcrest. If so, the first step of Curry's two-step argument falls.

### B

The common law doctrine applied by the chairwoman in vacating the order of default is sometimes called the *Frow* doctrine, a name derived from *Frow v. De La Vega,* 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872), in which the doctrine was applied.[6] *Frow* involved a civil action alleging that eight defendants, including Frow, jointly undertook to defraud the plaintiff. Frow defaulted, a decree *pro confesso* was taken against him, and a final decree absolute thereafter entered

---

5. Curry also places substantial reliance on *Sullivan v. Miller,* 26 Md. App. 189, 337 A.2d 185, *cert. denied,* 275 Md. 756 (1975). Reliance on *Sullivan* fails, however, as it too was based on the default procedure in effect prior to the 1984 revision.

6. The Court of Special Appeals, and the parties to this case, have referred to the doctrine as the *Lingan* doctrine, based upon *Lingan v. Henderson,* 1 Bland 236 (Md.Ct.Chanc.1827). *Lingan* is discussed in Part II.C, *infra.*

against him. Subsequently, at trial of the remaining defendants, the merits were decided adversely to the plaintiff. Reversing the judgment against Frow the Court said:

"If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.

" . . . But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal."

15 Wall. at 554, 21 L.Ed. at 61.

The *Frow* doctrine is widely accepted. *See* 1 H.C. Black, *The Law of Judgments* § 209, at 310–12 (2d ed. 1902); 3 A.C. Freeman, *Law of Judgments* § 1277, at 2653–56 (5th ed. 1925); 6 J. Moore, *Moore's Federal Practice* ¶ 55.06, at 55–48 to 55–56 (2d ed. 1992); 10 C. Wright, A. Miller & M.K. Kane, *Federal Practice and Procedure* § 2690, at 455–59 (2d ed. 1983); 21 Fed.Proc., L.Ed. § 51:16, at 461 (1984); 47 Am. Jur.2d *Judgments* § 1160, at 189–90 (1969); J. Byrd, Note, *Firestone Tire & Rubber Co. v. Little:* Overextension of the Common Defense Doctrine, 35 Ark.L.Rev. 328, 328–34 (1981); Annotation, *Successful Defense by One Codefendant, or a Finding for "Defendants," as Inuring to Benefit of Defaulting Defendant,* 78 A.L.R. 938, 938–53 (1932).

There are cases in which the nature of the liability claimed and the relationship between the defendants have caused courts to refuse to apply the successful defense by a non-defaulting defendant to a defendant in default. *See, e.g., Farzetta v. Turner & Newall, Ltd.,* 797 F.2d 151 (3d Cir.1986) (Where plaintiff in asbestosis case was found to have assumed the risk, *Frow* was not applied because trial record did not

support the factual predicate that defaulting defendants supplied quantities of asbestos fiber similar to that of successful defendant).

Curry cites *International Controls Corp. v. Vesco*, 535 F.2d 742, 746 n. 4 (2d Cir.1976), as questioning the continued force of *Frow*. That court, nevertheless, immediately followed the language relied upon by Curry by saying that "[i]n any event, at most, *Frow* controls in situations where the liability of one defendant necessarily depends upon the liability of the others."

The United States Court of Appeals for the Third Circuit has stated that

> "*Frow* stands for the proposition that if at trial facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved."

*Farzetta v. Turner & Newall, Ltd.*, 797 F.2d at 154.

Whatever the full scope of the *Frow* doctrine may be, it certainly operates where the conduct of the defendant who appeared and successfully defended on the merits is the sole basis for liability of a defaulting defendant under the principle of *respondeat superior*. Motor tort cases have so held. *See Plott v. York*, 33 Cal.App.2d 460, 464, 91 P.2d 924, 926 (1939) ("Where . . . the real actor, who is liable personally notwithstanding his acting for his employer, is not guilty, it necessarily follows that his employer for whom he was acting cannot be held."); *Gangl v. Ford Motor Credit Co.*, 37 Mass.App.Ct. 561, 641 N.E.2d 709, 711 (1994) ("A finding that the agent or servant is not negligent compels a similar finding, as a matter of law, for the [defaulting] principal or master.").

## C

We do not share the concern of the Court of Special Appeals that our prior cases have left the *Frow* doctrine of questionable vitality in this State.

*Lingan v. Henderson,* 1 Bland 236 (Md.Ct.Chanc.1827), *rev'd,* 1 Bland 283 (Md.1830), is the first reported case in Maryland dealing with defaulting co-defendants. In 1807 Lingan conveyed a parcel of land to Henderson for a future promise to pay. Lingan and Henderson died intestate before the money could be paid. Lingan's widow sued Henderson's survivors, *i.e.,* his three children, his widow, and her husband. Two of the children failed to answer, and Lingan's widow requested a decree *pro confesso* against them. The third child had answered and claimed that the statute of limitations barred Lingan's complaint.

The Court of Chancery distinguished between defenses which went to the whole of the matter and those that only covered one defendant:

> "Whence it appears, that in equity as at law, where the defence made by any one defendant extends only so far as to cover nothing more than the interest of him by whom it is made, the plaintiff may yet have relief, if he establishes his claim against the other defendants; but that where the defence made by one defendant goes to the whole cause of complaint, and the plaintiff fails to establish his case in opposition to such defense, he cannot be relieved in any way whatever, although his claim should be confessed by the other defendants."

*Id.* at 261. Like the Supreme Court in the later *Frow* decision, the Court of Chancery focused on the need for consistent judgments:

> "[I]t is a well settled rule, in equity as well as at law, that any defence coming from any one of a plurality of defendants, which goes to the whole, and shows, that the plaintiff has no cause of suit, effectually precludes the Court from giving relief in any way whatever against any other defendant ... because a plaintiff can only obtain relief upon the strength of his own title, and by shewing, that it is good against all the world as well as against each one of the then defendants; and also, because every Court of justice must act consistently, and cannot be allowed to contradict itself,

by saying, in the same decree, in the same case, that the plaintiff has no cause of suit whatever; and also, that he has a just and well founded cause of complaint."
1 Bland at 275. In the end, judgment was entered for the plaintiffs as the Court of Chancery determined that the defenses offered by the defendants were not supported by the facts. *Id.* at 283.

The defendants appealed, and the Court of Appeals reversed as to all defendants, but without opinion. 1 Bland 283. This Court's rationale was later stated to have been that

"[t]he bill presented no case warranting relief, but by a decree for the reconveyance of the land by the heirs of Henderson; or payment of the purchase money by the administratrix. To neither of which remedies did the complainants shew. themselves entitled upon the proof. The Court of Appeals therefore, could not have done otherwise than as they did, reverse the decree and dismiss the bill."

*McCormick v. Gibson,* 3 G. & J. 12, 19 (1830). *See also Baltimore & Ohio R.R. Co. v. Trimble,* 51 Md. 99, 110 (1879) ("The case of [*Lingan* ] was reversed by the Court of Appeals because the complainants were not entitled to relief upon the merits as disclosed by the proof.").

*McCormick* presented the question of whether a valid statute of limitations defense pled by one defendant would inure to the benefit of a defaulting defendant. The action was a creditor's bill against the heirs and devisees of a debtor whose personal estate was insufficient to pay the debts. *McCormick,* however, held that the defense of limitations "is a mere statutory bar, intended only for the protection of those who seek shelter under its wings." 3 G. & J. at 17. Further, the defendants' interests that the action sought to reach were "several and distinct, and not joint; the claim against each being in proportion to the amount devised to him." *Id.* at 18. Thus, the defendant who successfully pled limitations protected only his share from the relief claimed.

*See also Simms v. Lloyd,* 58 Md. 477 (1882) (because limitations must be specially pled, plea of limitations by one

defendant does not inure to another defendant who has not so pleaded, or who has not pleaded at all).

■ Historically, Maryland law recognizes the *Frow* doctrine.

## D

Curry also makes a frontal assault on any continued recognition of *Frow* by urging the view of default judgments applied in *Fred Chenoweth Equip. Co. v. Oculus Corp.*, 254 Ga. 321, 328 S.E.2d 539 (1985). There an equipment supplier sued Oculus, a subcontractor, on their contract and sued the general contractor and its surety on the payment bond. Oculus defaulted, and the trial court entered a default judgment. Oculus appealed, and the intermediate appellate court overturned the judgment in light of *Frow*, ruling that the judgment should await an adjudication as to the liability of the non-defaulting defendants. The supplier appealed and argued that there were two separate causes of action in the case and that the liability of Oculus was not strictly joint. The Supreme Court of Georgia found it unnecessary to analyze this argument, basing its "opinion instead on the rejection of the defaulting-joint-defendant-rule." 328 S.E.2d at 541.

The Georgia court said:

"We view the matter differently and decline to follow that rule. Considering the case before us, the default judgment against Oculus did not reach the merits of the claim on the contract. The default judgment merely determined that Oculus failed to follow the procedural requirement that a timely answer be filed. The consequence of this failure was that judgment was entered against Oculus. When the claim against Deepwater and Aetna on their bond is pursued in the trial court it will be necessary to decide the merits of the contract claim because there is no liability on the bond unless there is first liability on the contract. Should it be determined Oculus has no liability on the contract we view this as neither absurd nor inconsistent with the default judgment against Oculus. Oculus suffered judgment be-

cause of its failure to answer the complaint and was therefore denied an opportunity to litigate the merits. This is no less than and no greater than the harshness existing in a default judgment against a single defendant. The merits are not reached because of the default. It may be that other defendants will go on to prevail on the merits but we do not think this should relieve Oculus of its default." *Id.* (footnote omitted).

The Third District Court of Appeal of Florida is the only court outside of Georgia that has cited and applied *Chenoweth. Behar v. Jefferson Nat'l Bank at Sunny Isles,* 519 So.2d 641 (Fla.Dist.Ct.App.1987), *cert. denied,* 531 So.2d 167 (Fla.1988). These decisions appear to rest on the premise that a default judgment is primarily a punitive measure that sanctions the breach of the procedural regulation. Maryland law, on the other hand, does not weigh the balance so heavily against the truth seeking function of adversary litigation.

 In Maryland a default judgment is considered more akin to an admission of liability than to a punitive sanction. In *Hopkins v. Easton Nat'l Bank,* 171 Md. 130, 134, 187 A. 874, 876 (1936), this Court said that a default results in ".the tacit admission by the defendant in default of the truth of the allegations of the bill of complaint as they are averred." In *Pacific Mortgage & Inv. Group, Ltd. v. Horn,* 100 Md.App. 311, 332, 641 A.2d 913, 923 (1994), the Court of Special Appeals stated that "[a] judgment by default constitutes an admission by the defaulting party of its liability for the causes of action set out in the complaint." And finally, in *Gotham Hotels, Ltd. v. Owl Club, Inc.,* 26 Md.App. 158, 173, 337 A.2d 117, 125 (1975), the court held that "failure to plead ... constituted an admission ... of liability for the cause of action set forth in the declaration."

The federal courts agree. *See Thomson v. Wooster,* 114 U.S. 104, 111, 5 S.Ct. 788, 792, 29 L.Ed. 105, 107 (1885) ("to take a bill *pro confesso* is to order it to stand as if its statements were confessed to be true"); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d

Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *Matter of Visioneering Constr.,* 661 F.2d 119, 124 (9th Cir.1981); *Montcalm Pub. Corp. v. Ryan,* 807 F.Supp. 975, 977 (S.D.N.Y.1992); *Miller v. Tony & Susan Alamo Found.,* 748 F.Supp. 695, 697 (W.D.Ark.1990), *aff'd,* 924 F.2d 143 (8th Cir.1991); 6 J. Moore, *Moore's Federal Practice* ¶ 55.03[2], at 55–19 (2d Ed. 1992).

We decline to adopt the *Chenoweth* approach.

### E

■ For all of the foregoing reasons, and without indicating what the outer boundaries of the *Frow* doctrine might be in Maryland, we hold that in a negligence case a finding that an appearing agent or servant has not committed actionable negligence inures to the benefit of a defaulting principal whose liability rests solely on *respondeat superior.*

■ In sum, the order of default in arbitration against Hillcrest was interlocutory and, therefore, subject to modification. The panel chairwoman not only had the discretion to strike the order of default and enter an award for Hillcrest, but also, under the *Frow* doctrine, a refusal to have done so would have been an error of law.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID TWO–THIRDS BY THE PETITIONER, LYDIA CURRY, AND ONE–THIRD BY THE CROSS–PETITIONER, HILLCREST CLINIC, INC.*